772 P.2d 702

Lorenzo SANCHEZ, Plaintiff–Appellant,

v.

Frank GALEY, Jr., d/b/a Bennett Creek Farms, and Rusty Anderson, Defendants–Respondents.

No. 16974.

Supreme Court of Idaho.

April 17, 1989.

Hepworth, Nungester & Lezamiz, Twin Falls, and Goicoechea Law Office, Boise, for plaintiff-appellant. John Hepworth and John T. Lezamiz argued.

Elam, Burke & Boyd, Boise, for defendants-respondents. Robert M. Tyler, Jr., and J. Ray Durtschi argued.

BISTLINE, Justice.

This is the second appeal in this case. Our opinion on the first appeal, *Sanchez v. Galey*, 112 Idaho 609, 733 P.2d 1234 (1987) (*Sanchez I*), detailed the course of the litigation in the trial court proceedings and need not be repeated, other than to note that Sanchez suffered severe injuries when his right hand was caught in the chain drive of a potato harvester owned by his employer, Bennett Creek Farms, and operated by its employee, Rusty Anderson. A unanimous jury awarded Sanchez a verdict totaling $1.35 million in damages.

After the entry of the judgment, Bennett Creek and Anderson moved for a remittitur reducing the amount of damages awarded, or in the alternative, for a new trial on various grounds, including excessiveness of the damages pursuant to I.R.C.P. 59(a)(5). The district court granted the defendants' motion. Sanchez was given the option of accepting a $400,000 reduction in damages or a new trial. On Sanchez's appeal this Court reversed the trial court order and remanded with instructions that the district court reconsider its earlier ruling on defendants' motion in light of the principles announced in our opinion and in *Quick v.*

*Crane,* 111 Idaho 759, 727 P.2d 1187 (1986) announced the same day as *Sanchez I.*

Following proceedings on remand, the district court once again ordered Sanchez to remit $400,000 and to accept $950,000 in damages or face a new trial. Although our opinion in *Sanchez I* explicitly required the entry of findings of fact as to whether the trial court was, in fact, shocked by the jury award, or found such award unconscionable so as to have the appearance that it was given under the influence of passion or prejudice, the trial court did not make new findings as such, but utilized his prior written decision which was altered by interlineating six additional words at two different places and adding a 39–word conjunctive clause. This will be more easily understood by printing the pertinent part of the earlier opinion of the trial court with the interlineated additions in bold face type:

> In this particular case, several observations are initially noteworthy. This is the largest verdict I have seen returned by a jury in any personal injury action tried before me. On the other hand, I have never tried a case which was more thoroughly prepared for trial nor more skillfully presented, including the effective use of visual aids. The plaintiff is a handsome man, likeable and appealing, who obviously made a favorable impression on co-workers as well as doctors, psychologists, therapists, and other professionals who worked with him. His attending physician was exceptionally competent and knowledgeable in his field who had available for viewing detailed photos of most stages of his surgeries and medical treatment of the plaintiff. He had taken numerous photos to assist him in lectures on the surgical repair of hands. I cannot say that I have ever witnessed a better prepared or more thorough and skillful representation by defense counsel either, but the chips here just seemed to be stacked heavily in plaintiff's favor. Accordingly, the large verdict is understandable[.] **and it did not shock me.**

After thus "weighing" the evidence to determine what amount (as a "thirteenth juror") I would have awarded in order to do substantial justice in this case, and fully and fairly compensate plaintiff for all his damages, I cannot in good conscience, come within $400,000 of the jury's verdict[.] **and I find such award unconscionable.** That is a substantial difference, **and the disparity between the jury's award and what this Court would have awarded is so great as to suggest that the award is what might be expected of a jury acting under influence of passion or prejudice,** and unless plaintiff is willing to accept a remittitur to $950,000, plus interest thereon at the highest legal rate from the date of judgment, I must therefore grant defendants a new trial.

I must acknowledge that it has been extremely difficult for me to discharge this "obligation" and in effect substitute my judgment on the damages for that of the jury. I have always felt a jury verdict is entitled to great deference particularly in the difficult area of damages, and particularly where, as here, it is unanimous. I have never had a case where so much of the damages were for items which are especially difficult of ascertainment with mathematical precision, such as pain and suffering. The fact that I could not have the benefit of any extensive discussion and consideration with 11 fellow jurors concerned me. The guidelines or suggestions as to how to discharge this obligation given in *Dinneen* are limited.

I will therefore attempt to explain how I have arrived at this result, after assuming that the case had been tried to the court, without a jury, and after I had decided the issue of liability in plaintiff's favor. I first considered the various elements of damage separately.

In weighing the evidence on damages it clearly indicated almost $100,000 in actual medicals, considering time and transportation for medical treatment. In addition, $30,000 would be reasonably probable for future medical and psychological care and treatment and vocational rehabilitation. About $21,000 had been lost in wages between the accident and

the trial. I would allow another year's wages of $10,500 for him to obtain appropriate repatriation into the labor force.

After weighing the evidence in the case as to the earning capacity, age, life expectancy, habits, disposition, education, work history, aptitude, interest, intelligence and other pertinent factors in computing future lost wages, I would feel it reasonable to consider the defendant's faculties and capacity for work is about 50% impaired due to the effective loss of his right hand. That such percent of impairment would likely decrease with training and after developing compensatory work skills and ability at at least the rate of earnings increases due to inflation. I would therefore multiply $5,250.00 (50% of his $10,500/yr. earnings) by 40 years—(assuming he would likely cease work around 60 years of age, or at least fully compensate for his disability by then) and thus arrived at $210,000 as the present cash value of reasonably probable lost future wages.

With regard to plaintiff's inability to perform usual activities, I feel it would be just to award him about $25,000 to permit him to purchase special compensatory devices and appliances as they now exist or may hereafter become available, and I feel that another $50,000 would be fair to attempt to compensate him for the substantial disfigurement of his right hand and loss of enjoyment of life, i.e. hobbies and recreation.

Finally, in view of the considerable physical and mental pain and suffering unquestionably experienced by the plaintiff in view of the nature, extent and duration of the injury here, (permanent and entire loss of dominant hand) the psychological impact on the plaintiff, the multiple surgeries he has gone through, and the disruption of his life, I would feel that $300,000 would be fair compensation; and for such pain and suffering reasonably certain to be experienced in the future, an additional sum of $200,000.

In thus reluctantly discharging my "Dinneen obligation," I have found it particularly difficult in this case. It is usually much easier in cases involving solely property damage or lost income or wages. I cannot honestly say that I would personally be willing to go through the loss, pain or suffering experienced by the plaintiff here for any amount of money. That has also been true in most other personal injury cases I have presided over, however. Nevertheless, the injury and suffering and loss having occurred, some measure of just compensation must be attempted.

Secondly, as sort of a check on the amount I arrived at through the foregoing analysis, I attempted to mentally compare other cases I have tried, adjusting them as best I can according to the respective ages, and vocations of the injured persons, the nature, extent and duration of their injuries, the recency of the case, and the various other appropriate aggravating or mitigating circumstances involved in the respective cases. After doing so, I feel that an award in the neighborhood of as much as $950,000 would not be significantly out of line with such other awards.

## III—INSUFFICIENCY OF EVIDENCE

I.R.C.P. 59(a)(6) provides that a new trial may be granted if there is insufficient evidence to justify the verdict or it is against the law. There was clearly sufficient evidence to support both the verdict in plaintiff's favor on the issue of liability and the amount of damages awarded to him.

In addition, by its post-remittitur memorandum opinion, the trial court ruled that its post-judgment order "which granted a new trial unless a remittitur was accepted, effectively vacated the [earlier judgment] entered upon the jury's verdict." The trial court stated only the conclusion that, "from that time no judgment was in effect upon which interest would run unless the Supreme Court had reinstated the judgment on appeal." No authority for that proposition was cited.

Sanchez's appeal requires us to address the following issues:

I. Did the district court err in its decision concerning the accrual of post-judgment interest?

II. Did the district court err by again directing Sanchez to accept a remittitur or, alternatively, undergo a new trial on the issue of damages?

## I. POST JUDGMENT INTEREST

██ Following remittitur and after hearing the parties, the district court entered its Decision and Order on May 27, 1987, ruling on the plaintiff's entitlement to interest on the judgment:

> ... the Order dated January 25, 1985 and entered herein on January 28, 1985 which granted a new trial unless a remittitur was accepted, effectively vacated the Judgment and Amended Judgment previously entered on the jury's verdict. From that time, no judgment was in effect upon which interest would run, unless the Supreme Court had reinstated the judgment on appeal.

> \*    \*    \*    \*    \*    \*

> Accordingly, I conclude that no interest will start to accrue until a final judgment is entered either after acceptance of the remittitur or conclusion of a new trial.

The court so ruled at the instigation of the defendants as urged in a written Memorandum submitted responsive to a plaintiff's memorandum. Therein the contention was made that "no post-judgment interest would commence to run until entry of judgment following plaintiff's election of the remittitur." R., p. 26. This was further explained by the defendants:

> ... post-judgment interest would not commence to run until entry of judgment for the reduced amount, because until that point in time, there would have existed the possibility that the matter would be retried to a jury on the issue of damages.

R., p. 26. But, defendants also conceded to the trial court that this Court's stay order on accepting the appeal precluded Sanchez from having to make an election. As a matter of fact, the defendants complained rather strongly to the trial court that the Supreme Court stay order had the effect of allowing Sanchez to delay making any decision required of him by the trial court's order. Additionally, defendants conceded also the:

> ... existence of case law adopting the position that interest runs from entry of the judgment on the jury's verdict in cases where the appellate court reverses a trial court's order granting defendants' post-trial motions.

R., p. 34.

On the other hand, the defendants had earlier on June 12, 1985, perfected their own cross-appeal from the final judgment entered on October 31, 1984, which cross-appeal included orders entered thereafter by the trial court on January 28, February 6, and February 19, 1985. The defendants' cross-appeal requested the inclusion of some material in the appeal record which was in addition to that requested by Sanchez on his appeal. Notwithstanding that, the district court was thus led into the error of asserting that the order of January 28, 1985, "effectively vacated the Judgment ... entered on the jury's verdict."

The final judgment, however, has not been vacated *specifically* [which is the ordinary and better practice] nor has it been vacated *effectively*. The trial court's view would have been correct only if Sanchez had properly signified his refusal to consent to a reduction in the judgment on the verdict and the alternative of a new trial became effective. Then the earlier judgment would have been vacated, and no interest would have accrued until the entry of a new judgment. *Rindlisbaker v. Wilson*, 95 Idaho 752, 519 P.2d 421 (1974). However, as matters stood upon the first appeal to this Court, and would continue to stand in the event of a timely second appeal, Sanchez still had the option of electing to consent to a lower judgment in the amount $950,000—upon which interest would run from the date of the original judgment less the remittitur, *Id.* at 762, 519 P.2d at 431—or to undergo a new trial. Thus, to this date, the original judgment on

the jury's verdict of $1.35 million remains in full force.

Moreover, a good portion of the court's opinion in *Sanchez I* was devoted to passing on issues which the defendants presented in briefing and arguing their cross-appeal. As to the trial court's induced belief that "no judgment was in effect upon which interest would run, *unless* the Supreme Court had reinstated the judgment," —the answer is simply that this Court had no reason to concern itself with reinstating a judgment which had not been vacated *and from which both parties had appealed.* Accordingly, we hold that the district court erred in ruling that its post-judgment order effectively vacated the monetary judgment entered on the jury's verdict.

Additionally, although not given mention in our *Sanchez I* opinion there is the matter of the order which was prepared for the trial court's signature after that court issued its January 7, 1985 Memorandum Decision, the conclusion of which stated that "Counsel may prepare appropriate orders for my signature consistent with this opinion." Presumably, counsel for each of the parties submitted proposed orders—in which regard the record is silent as to which counsel's proposed order was utilized —but the one accepted, signed by the judge, and filed with the clerk contains language therein which is somewhat out of the ordinary, reading thusly:

> IT IS FURTHER ORDERED that defendant's motion for a new trial pursuant to I.R.C.P.(59)(a)(5) is granted *unless plaintiff will accept the sum of $950,000.00* in remittitur of the Judgment and Amended Judgment of this court entered on November 1 and 2, 1984, respectively, plus interest on any Second Amended Judgment entered pursuant to this Order in the amount of $950,000.00, plus costs, at the rate of 18 percent per annum from the date of entry of such Judgment.

R., p. 51 (emphasis supplied). It would be one thing to condition the grant of a new trial upon the plaintiff's failure to timely file his *consent* to a reduction of the judgment by the sum of $400,000, and quite another to conditionally grant a new trial

for the plaintiff's failure to "*accept* the sum of $950,000," plus interest, plus costs and interest on the costs. The first requires a filed consent; the second requires an acceptance which has been tendered.

Moreover, the defendants did not at any time test the Sanchez staying power by making a tender of $950,000, plus costs and accrued interest on both, in order to ascertain if it would be *accepted* as per the terms of the district court's order. A partial transcript of a hearing attached to the Defendants' Memorandum submitted to the trial court shows counsel for Sanchez saying to the court and counsel for defendants:

> They can always stop the interest, Your Honor. *We'll accept their nine-fifty anytime they want to pay it,* and the interest stops on that nine-fifty the minute we get our money. I'll say in open court that *we're prepared to accept their nine hundred and fifty thousand* but we want to appeal the judgment and the interest—or have the judgment reinstated as the verdict was returned. Then, of course, they only need worry about the interest on that portion of the judgment not paid.

R., p. 60–61.

It is also to be noted that in this case, as contrasted to *Leliefeld v. Panorama Contractors, Inc.,* 104 Idaho 357, 659 P.2d 111 (1983), 111 Idaho 897, 728 P.2d 1306 (1986), there was, with respect to the jury's damage award, no issue here as to apportionment. On the first *Leliefeld* appeal, the jury's adjudication of monetary damages suffered by the plaintiffs was specifically affirmed, "... we consider the damages severable from the liability issue, ... we affirm that determination." 104 Idaho at 375, 659 P.2d at 129.

After proceedings on remand for a redetermination of liability on the second appeal to this Court the sole issue presented was the interest allowable on the jury's determination of plaintiffs' damages. This court held that the claimed damages having been reduced to a liquidated amount in *Leliefeld I,* the trial court did not err in ruling that

interest properly accrued thereon. Specifically we first observed:

The main thrust of the defendants' argument to us is that until proportionate culpability would be determined at the second trial it would be impossible for them, with any degree of certainty, to make any tender of payment on damages—either to the plaintiffs or into the court registry, in order to stop the accrual of interest. However, as the Wisconsin Supreme Court has pointed out, '*The damages were liquidated at the first trial, and it was theoretically possible for a tender to have been made....* This is especially true when, as here, no question of damages was involved upon the second trial.' *Id.* [*Nelson v. Travelers Ins. Co.,* 102 Wis.2d 159, 306 N.W.2d 71] at 73 [1981] (quoting from *Zeidler v. Goelzer,* 191 Wis. 378, 211 N.W. 140 (1926).

*Leliefeld v. Panorama Contractors, Inc.,* 111 Idaho 897, 906, 728 P.2d 1306, 1315 (1986) (emphasis added). We then stated that *Leliefeld II* "presents a set of circumstances more suggestive of the advisability of [making] a tender than any of the Wisconsin cases," and we explained why—all of which is readily available at 111 Idaho at pp. 906–907; 728 P.2d at pp. 1315–1316.

Today, we have a set of circumstances even more suggestive of the advisability of making a tender than was present in *Leliefeld II.* A judgment on the jury's verdict had been entered in favor of Sanchez in the amount of $1,350,000, and was accruing interest.

At the instigation of the defendants the district court had made its own computation of damages, and had arrived at its damage assessment of $950,000. That would be the amount of the judgment on the verdict if Sanchez consented to such reduction. No lesser amount was involved. No apportionment was involved; the judgment on the verdict was jointly and severally against Frank Galey and his employee, Rusty Anderson. Likewise, if Sanchez consented, the amended judgment which would have been entered against the defendants would have been the same joint and several judgment in the lesser amount of $950,000. It would have carried the same date as the initial judgment on the jury verdict.

On the advisability of making any tender in order to avoid accruing interest on the still extant judgment, the defendants had to be well aware that a jury, described by the district court as fine a jury as he had ever experienced, had set damages at $1,350,000. Defendants were, by reason of their successful motion, also advised by the results obtained that the district court's assessment of damages was $950,000.

The defendants, or their insurance carrier, if any, whichever is the case being of no moment, clearly decided to make no tender whatever, and have retained the use of the money represented by the district court's lower figure of $950,000 since the judgment was entered on the verdict on October 31, 1984. In January of 1985 the defendants were made aware that the court-set damages were that sum of $950,000. And, at the same time they were made aware that the trial court had closely examined their claim for a new trial on the issue of liability based on alleged errors, and knew that the court found none. The defendants then on their cross-appeal in *Sanchez I* sought to persuade this court of reversible error at the trial, but again failed, and were so advised October 17, 1986. And again no tender of any kind was made to stop the accruing interest.

The decision of the Court of Appeals in *Dursteler v. Dursteler,* 112 Idaho 594, 733 P.2d 815 (Ct.App.1987), which is almost side-by-side with *Sanchez I,* also served to advise the defendants that "When a judgment is modified downward, the new sum draws interest from the date of the original judgment ... post-judgment interest may run on the final judgment from the date of the original judgment despite a subsequent modification on appeal." 112 Idaho at 596, 733 P.2d at 817. We perceive no difference between a modification made at the trial court level, or by an appellate court.

Since the views of Justice Johnson on the second issue, discussed below, command a majority, the trial court's order requiring the plaintiffs to accept a $400,000 reduction

in the judgment entered on the jury's verdict, or otherwise face a new trial, will stand and is affirmed.

If Sanchez timely files his consent to the order of remittitur, the district court will thereupon enter a modified judgment in the sum of $950,000, plus interest accruing thereon at the legal rate (18 percent) since the date of October 31, 1984, until satisfied.

HUNTLEY and JOHNSON, JJ. and McFADDEN, J. pro tem, concur.

JOHNSON, Justice.

## II. GRANT OF NEW TRIAL OR REMITTITUR

■ *Sanchez I* succinctly stated the law with regard to consideration of new trial motions by trial courts:

> In sum, *Dinneen* and *Quick* suggest the following course of conduct for a trial court judge pursuant to a motion for new trial under I.R.C.P. 59(a)(5) and (6): The trial court is not merely to weigh its calculations as against those of the jury. Rather, the trial court is to weigh the evidence to determine if the jury's verdict is supportable by the evidence and when it thinks not, it should grant a new trial pursuant to I.R.C.P. 59(a)(6). If, technically, the verdict is supported by substantial, competent evidence and it still finds the verdict excessive, then it must rule whether in its opinion the jury appears to have acted under the influence of passion or prejudice. In ascertaining whether the jury appears to have so acted, the judge looks to the disparity between the awards and to whether such disparity 'shocks the conscience.'

112 Idaho at 615, 733 P.2d at 1240.

In setting aside the order granting remittitur or new trial in *Sanchez I* this Court said:

> On the basis of the statements of the trial court, we cannot ascertain whether the trial court was either shocked by the jury's award, or whether it found that award unconscionable. Rather, the trial court merely substituted its award amount, reached by way of a different method of calculation, for that of the jury. The trial court made no finding that the amount of the jury verdict 'appeared to have been given under the influence of passion or prejudice.' Therefore, the order granting remittitur or new trial is set aside. We remand to the trial court so that it may enter findings of fact as to whether he was, in fact shocked by the jury award, or found such award unconscionable so as to have the appearance that it was given under the influence of passion or prejudice. Following entry of those findings, the trial court may either re-institute the remittitur or not do so, whichever is appropriate and consistent with this opinion.

*Id.* at 616, 733 P.2d at 1241.

On remand the trial court found that the amount of the verdict did not shock him, but that he did find it unconscionable. The trial court also found that the amount of the verdict indicated that the jury was acting under the influence of passion or prejudice. Based on these additional findings, the trial court re-instituted the remittitur. The trial court's findings fulfilled the condition precedent established by this Court in *Sanchez I* for re-instituting the remittitur. That condition precedent is the law of this case. I am unwilling to tinker with the exercise of the trial court's discretion in making these findings. To do so, not only violates the law of this case, but also changes the law in this state concerning the granting of motions for new trials under I.R.C.P. 59(a)(6) as succinctly stated in *Sanchez I*.

The trial court's order requiring a remittitur or granting a new trial is affirmed.

BISTLINE and HUNTLEY, JJ., and McFADDEN, J. pro tem, concur.

BISTLINE, Justice, specially concurring in Part II.

Although it appears that this case has taken on an unusual and certainly not unforeseeable turn, it cannot be said that Justice Johnson errs in his analysis. The district court in *Sanchez I* was given specific directions as to proceedings on remand. Justice Johnson sets those di-

rections out verbatim, and he also repeats verbatim this Court's instructions to be followed in passing on Rule 59(a)(5) and (6) motions for new trial. The trial court appears to have fairly well followed those instructions. If so, then seemingly it would ill-behoove this Court to find error for doing so.

When one reads and rereads the directions given to the district court, the overwhelming impression is that the district court was actually invited to find that he was shocked by the jury's damage award, or that the award was unconscionable so as to give the appearance of having been given under the influence of passion or prejudice. Accordingly, the district court inserted the magic words into his previous written decision. As Justice Johnson correctly notes, thereby the district court "fulfilled the condition precedent established by this Court in *Sanchez I* for re-instituting the remittitur."

Unfortunately, the language of those directions given in *Sanchez I* did not in the least intimate to the district court that there was also the alternative, *i.e.*, to find whether he was *not* in fact, shocked by the award, or whether he did *not* find the award so unconscionable as to give the appearance of having been given under the influence of passion or prejudice.

Moreover, another fault in *Sanchez I* brought out vividly by Justice Johnson's isolating of the two excerpts from *Sanchez I* set out in Part II of today's opinion for the Court is the statement that, "If technically the verdict is supported by substantial, competent evidence and it still finds the verdict excessive, then it must rule whether in its opinion the jury appears to have acted under the influence of passion or prejudice." I do not understand this particular use of the word "technically." What I *do* understand is that where the district court finds a verdict supported by substantial and competent evidence, it can *not* find that it is excessive. A verdict is excessive when it is *not* supported by the evidence. *But, where the supporting evidence is in place,* there is no need nor reason to consider the possibility of passion or prejudice. As recently as just one month ago, Justice Bakes wrote that a "trial judge can grant an additur or remittitur only by offering a new trial as an alternative, *and then only if he determines that the disparity* between his evaluation of damages and the jury's award *is sufficient to suggest* that the jury's evaluation of damages was the result of *passion or prejudice.*" *Howes v. Fultz,* 769 P.2d 558, 563 (Idaho 1989) (emphasis supplied). This was a misstatement of the law which until it is corrected will misguide the trial courts and the trial bar and do untold mischief.

Hoping to avoid this further confusion in the law, my dissenting opinion in *Howes* explained that:

> Idaho case law does *not* require that the trial court in *all* instances must determine whether an excessive or inadequate verdict has resulted from a jury appearing to have acted under the influence of passion or prejudice. A trial court after going through the weighing process, and then the comparing process, will then make the determination of inadequacy or excessiveness, and accordingly rule on the motion for a new trial. That is the teaching of *Checketts v. Bowman, supra* [70 Idaho 463, 220 P.2d 682 (1950)], where passion and prejudice was given no consideration in awarding a new trial, and in fact, was specifically rejected. The trial court there held the verdict excessive. The Supreme Court agreed, and also unanimously decided by how much it was excessive.

> Passion and/or prejudice was specifically ruled out by the trial court, and then on appeal was not in the Supreme Court's equation. The rule in place at the time of *Checketts* was:

> > [W]here it appears that the damages are so large as to indicate the influence of passion and prejudice in the verdict a new trial will be granted. If it appears that the verdict is excessive but passion and prejudice are not indicated, the court will reduce the verdict to the amount supported by the evidence making its acceptance optional.

*Summerfield v. Pringle,* 65 Idaho 300, 144 P.2d 214 (1943).

Assuming that he read my *Howes* opinion, Justice Bakes did not see fit to change what he declared to be the law, and, why should he bother, when even more disappointing, no response was had from the two justices who had so readily joined his opinion. It is because of such indifference that the Idaho case law in many areas is less than clear. Accepting that my reading of the prior cases might have little influence, appended to my opinion was the trial court's order granting the defendants a new trial in the *Checketts* case, which was taken from this Court's original file. In that same file is other documentation showing that *the district court specifically rejected a defendant's claim of passion and prejudice* on the part of the jury. Nevertheless, with Justice Bakes declining to correct his misstatement of the law, the trial bench and bar now have that, too, to contend with over the years.

Anent the case at hand, *Sanchez II,* there is much in the excerpts from *Sanchez I* quoted by Justice Johnson that resemble Justice Bakes' mistaken view of the law. This *Sanchez* case convinces me that compromise appellate decisions, like compromise jury verdicts, should be disfavored in Idaho jurisprudence.

Note should be carefully taken of the contents of Justice Huntley's opinion in *Sanchez I,* 112 Idaho 609, 616, 733 P.2d 1234, 1241 (1987), where is found this all-important language:

> [T]he trial court indicated that he found no fault with the jury to prompt his conditional order of new trial:
>
> > I was impressed with the jury, I think. I thought we had a very well selected jury. I thought they were a good cross-section of age, income, occupations, intelligence, certainly conscientious. *I don't think I could say I've had a finer jury in any case* ....
> >
> > ....
>
> [T]he trial court merely substituted its award amount, reached by way of a different method of calculation, for that of the jury. The trial court made

no finding that the amount of the jury verdict 'appeared to have been given under the influence of passion or prejudice.'

When Justice Huntley had made those correct observations, the issues on appeal should have been decided. To gain a majority opinion, however, there was a requirement of a third vote, and a firm third vote, had it been forthcoming at that point, would have brought this litigation to a conclusion, with the conditional order for a new trial being reversed, and directions given to reinstate the judgment on the verdict of the jury.

Where the district court specifically had not made a finding of passion or prejudice on the part of a jury, but in fact had commended it as he did, it was a huge mistake to reverse and remand for the express purpose of inviting the district court to make a finding that there was passion or prejudice influencing the jury, when in the first place the court had specifically not done so; rather the district court candidly benefited this Court with his views that the case was very well tried, that the jury's verdict was understandable, that it did not shock him, that the court had never had a finer jury in any case, and that he would have computed the damage factors somewhat differently. (*See* computations set out in specially concurring opinion of Bistline, J., 112 Idaho 609, 625, 733 P.2d 1234, 1248.)

In retrospect now, two and one-half years later, there is seen in Justice Bakes' dissenting opinion in *Sanchez I* the commendable caution that, "as written, the Court's opinion will only confuse the bench and bar alike." 112 Idaho at 625, 733 P.2d at 1248. I do not say that as expressing an agreement with his further view that *Sanchez I* should have been an affirmance of the district court's conditional grant of a new trial. Far from that. Obviously Justice Huntley did not ever have a necessary third vote from Justice Bakes or from Justice Shepard (who joined the dissent of Justice Bakes), and needed the vote of Justice Donaldson, who was at the time perhaps suffering from the pangs of pride of

authorship of *Quick v. Crane*, wherein the attempt was made to improve upon *Dinneen v. Finch*. Again in the retrospective mode, it would have been far better to have looked away and affirmed the district court's order in *Sanchez I* than to muddy the waters of the law by reversing with directions to the district court to reconsider —coupled with an outright invitation to find that this exceptionally fine jury's award of damages appeared to have been tainted with passion and/or prejudice, notwithstanding the district court's announced conclusions that the verdict was understandable, that the evidence supported the award, and, the amount of the verdict was not shocking.

In deeper retrospect, I find myself being brought ever closer to the philosophy of Justice Shepard to which I have been exposed for thirteen years. That philosophy, as I understand it, is based on a disenchantment with the thought that a trial judge in a case tried to a jury sits as a thirteenth juror armed with the power "to override the verdict of the other jurors if he conceives that justice has not been done." *DeShazer v. Tompkins*, 93 Idaho 267, 460 P.2d 402 (1969). In the *Checketts* case, 70 Idaho 463, 220 P.2d 682 (1950), the district court granted a new trial on the grounds that $40,000 was excessive for the death of a nine-year old child who was struck and killed by a vehicle passing a stopped school bus from which the boy had alighted. The district court decision granting the defendants a new trial did not even pretend to indicate by how much that verdict was excessive—which is to say that the thirteenth juror failed to function as such, and was simply content to say "too much means try it again, Sam." Thus the parents were being put to a succession of trials until a jury was found which would bring in a verdict more to the thirteenth juror's satisfaction.

On appeal, the Idaho Supreme Court, undoubtedly being of the compassionate view that the parents should not be so tortured with such successive trials, took it upon itself to alleviate that burden by fulfilling the function of a thirteenth juror. This it did on a cold appellate record which it augmented by a simple remark noting that an intermediate *California* court in "*Tyson v. Romey*, 88 Cal.App.2d 752, 199 P.2d 721 in 1948 speculated that $18,500.00 may be the highest award assessed in this state for the death of a five year old child." The court noted also that a review of collected cases in 25 C.J.S. showed that the highest award allowed to stand was $20,000, remanded with instructions to vacate the order granting a new trial to defendants and to enter a judgment on the verdict in the sum of $20,000, if the parents would timely consent thereto, but if not to proceed with a new trial as previously ordered. 70 Idaho at 467, 220 P.2d at 686. Here was indeed an outrageous application of the thirteenth jury doctrine. Here was an exercise of unjustifiable judicial intrusion into the jury function, with the court all in the same opinion reciting "We are mindful of the rule that the amount of damages is primarily for the jury to determine, and that its verdict will not be disturbed except where abuse of its discretion clearly appears." As counsel for the Checketts pointed out in their fruitless petition for a rehearing, no previous Supreme Court in Idaho had ever interfered with a jury's award of damages for the death of a child.

*Checketts*, 70 Idaho 463, 220 P.2d 682 (1950), was a case which should have been overruled at the first opportunity. Unfortunately it remained intact for twenty-two years. How much damage it caused cannot be known, as, having *stare decisis* precedential value, it undoubtedly was applied by the district courts in many instances where there was no appeal taken. In *Meissner v. Smith*, 94 Idaho 563, 494 P.2d 567 (1972), the *Checketts* precedent was used to the detriment of plaintiff parents who saw the district court rule that a $71,335.00 verdict was excessive and that there would be a new trial granted to the defendants unless the plaintiffs would consent to a remittitur of $32,000.00. Those plaintiffs did appeal. Justice Shepard wrote this Court's unanimous opinion. Just as his leadership prevailed in *Cheney v. Palos Verdes*, 104 Idaho 897, 665 P.2d 661 (1983), and struck down the notorious companion

cases of *Cox v. Stolworthy*, 94 Idaho 683, 496 P.2d 682 (1972), and *Jolley v. Puregro, Co.*, 94 Idaho 702, 496 P.2d 939 (1972), here the ill-starred *Checketts* case was overruled insofar as it stated anything contrary to *Meissner*, 94 Idaho at 566, 494 P.2d at 570. In particular, Justice Shepard justifiably placed a considerable reliance on *Garrett v. Taylor*, 69 Idaho 487, 210 P.2d 386 (1949), a case which preceded *Checketts* by a scant eight months. The Court's makeup in both cases was the same, and the opinions in both cases were authored by the same justice. *Garrett v. Taylor* was cited in the brief of plaintiffs filed with the Court in *Checketts*. Notwithstanding all of the foregoing, there is no mention whatever in *Checketts* of *Garrett v. Taylor*, probably for the obvious reason that *Garrett v. Taylor* stood staunchly in the way which the *Checketts* court was determined to go —or at least the author so determined, and the others were indifferent or careless.

As Justice Shepard pointed out in his *Meissner* opinion, *Checketts*, had dictated the district court's course of action, and *Checketts* was in need of reevaluation:

It is thus apparent that we must examine *Checketts* and determine if the reasoning and results thereof should be held valid and applicable to the case at bar. Defendants-respondents herein strongly urge that a limit on the amount which may be awarded for the death of a minor child in the State of Idaho has been set by *Checketts* and should be continued.

*Meissner*, 94 Idaho 563, 565, 494 P.2d 567, 570 (1972). In disavowing *Checketts* and its limitations on jury verdicts, especially where based on comparisons of verdicts in other jurisdictions, it was only needed to quote the *Garrett* case, the very case which was ignored in *Checketts*, ignored because it was directly contrary, as is readily observed:

'A comparison of the facts of this case with the numerous other cases involving a challenge to the amount of the verdict would be of little assistance. Each case must rest upon its own particular facts and the sound and impartial discretion of the jury and the trial judge.' 69 Idaho 487, 490, 210 P.2d 386, 388.

*Meissner*, 94 Idaho at 566, 494 P.2d at 571. *Stare decisis* is generally a good rule, but it should not place blinders on astute appellate judges who perceive that a prior case was not soundly structured. Justice Shepard was such an appellate judge.

Similarly, "law of the case" is as commendable a doctrine as *stare decisis*. For the judicial system to avoid chaos it *is* required that lower courts are *not* free to ignore the law of the case as it has been laid down by the appellate court.

Again, with the appellate court itself reviewing the same case on a different issue, there should be due regard for that which has been written before. However, unlike the situation where law of the case absolutely governs further proceedings in district court, as observed in the *Sanchez* case now at bar, an appellate court is not quite so fettered from correcting errors it has committed or directed.

The law of the case doctrine was recently given a thorough analysis and review by the Supreme Court of California in *Searle v. Allstate Life Ins. Co.*, 38 Cal.3d 425, 212 Cal.Rptr. 466, 696 P.2d 1308 (1985), and that review is worthy of being disseminated. In sum, the primary premise to be kept in mind is that just as *stare decisis* is not an inexorable command, so, too, **the doctrine of law of the case is not inflexible.**

The rule of 'law of the case' generally precludes multiple appellate review of the same issue in a single case. The doctrine applies to this court even though the previous appeal was before a Court of Appeal. In *United Dredging Co. v. Industrial Acc. Com.* (1930) 208 Cal. 705, 284 P. 922, this court stated: 'Where a decision upon appeal has been rendered by a District Court of Appeal and the case is returned upon a reversal, and a second appeal comes to this court directly or intermediately, for reasons of policy and convenience, this court generally will not inquire into the merits of said first decision, but will regard it as the law of the case.' (Id. at p. 712, 284 P. 922; see also *Davies v. Krasna* (1975) 14 Cal.3d

502, at p. 507, fn. 4, 121 Cal.Rptr. 705, 535 P.2d 1161.) As we stated in *People v. Shuey* (1975) 13 Cal.3d 835, 842, 120 Cal.Rptr. 83, 533 P.2d 211, '[t]he doctrine, as the name implies, is exclusively concerned with issues of law and not fact.'

As noted by this court, however, the 'doctrine of law of the case ... is not inflexible.' (*Davies v. Krasna*, supra, 14 Cal.3d, at p. 507, fn. 5, 121 Cal.Rptr. 705, 535 P.2d 1161.) In *England v. Hospital of Good Samaritan* (1939) 14 Cal.2d 791, 97 P.2d 813, a third appeal was taken to this court and we departed from the rule of law of the case noting that 'a court is not absolutely precluded by the law of the case from reconsidering questions decided upon a former appeal. *Procedure and not jurisdiction is involved.* Where there are exceptional circumstances, *a court which is looking to a just determination of the rights of the parties to the litigation and not merely to rules of practice, may and should decide the case without regard to what has gone before.*' (Id., at p. 795, 97 P.2d 813.) But '[i]n the absence of exceptional circumstances of hardship and injustice the need for attributing finality to considered judicial determinations compels adherence to the previous decision.' (*Gore v. Bingaman* (1942) 20 Cal.2d 118, 123, 124 P.2d 17.) Though we have recognized that the rule will be disregarded when necessary to avoid an 'unjust decision' (e.g., *DiGenova v. State Board of Education* (1962) 57 Cal.2d 167, 179, 18 Cal.Rptr. 369, 367 P.2d 865,) that exception must rest on 'a' manifest misapplication of existing principles resulting in substantial injustice' and not on mere disagreement with the prior appellate determination. (*People v. Shuey*, supra, 13 Cal.3d 835, 846, 120 Cal.Rptr. 83, 533 P.2d 211.)

Here, however, there is another reason, apart from the degree of injustice that might result from our now following *Searle I*, for our not regarding ourselves bound by that decision as the law of the case. *The primary purpose served by the law-of-the-case rule is one of judicial economy.* Finality is attributed to an initial appellate ruling so as to avoid the further reversal and proceedings on remand that would result if the initial ruling were not adhered to in a later appellate proceeding. (*People v. Shuey*, supra, 13 Cal.3d 835, 840–841, 120 Cal. Rptr. 83, 533 P.2d 211; *People v. Durbin* (1966) 64 Cal.2d 474, 477, 50 Cal.Rptr. 657, 413 P.2d 433; *Gore v. Bingaman*, supra, 20 Cal.2d 118, 123, 124 P.2d 17.) *That reason for the rule is inoperative when the court hearing the subsequent appeal determines that there should be a reversal on a ground that was not considered on the prior appeal.* The fact that reversal is necessary in any event frees us from the compulsion that the rule of law of the case might otherwise impose on us to follow a ruling in the prior appeal that we now perceive to be manifestly erroneous. (*State v. Zimmerman* (1977) 175 Mont. 179, 573 P.2d 174, 178; *State v. Hale* (1955) 129 Mont. 449, 291 P.2d 229, 235; *Barton v. Thompson* (1881) 56 Iowa 571, 9 N.W. 899; *Pennington v. Gillaspie* (1910) 66 W.Va. 643, 66 S.E. 1009).

*Searle*, 696 P.2d 1308, 1313–14 (Cal.1985).

Although, for the reasons illustrated by Justice Johnson, this Court may decide to consider itself bound by that which is found in *Sanchez I*, and bears the responsibility for facilitating the ease with which the district court could reaffirm its earlier determination allowing the defendants a new trial unless Sanchez would consent to a reduction in his judgment on the verdict, nevertheless it is not out of order to express genuine concerns as to the validity of the district court's actions on remand had this court not so paved the way.

On appellate review of a trial court ruling on a motion for a new trial a first concern is to consider the degree of deference the trial court accorded to the jury:

[S]ince it is a jury function to set the damage award based on its sense of fairness and justice, the trial judge must defer to the jury, *unless* it is apparent to the trial judge that there is a great disparity between the two damage awards

**1076**

and that disparity cannot be explained away as simply the product of two separate entities valuing the proof of the plaintiff's injuries in two equally fair ways.

*Sanchez I,* 112 Idaho at 615, 733 P.2d at 1240.

Other than *Sanchez I* and *Quick v. Crane,* 111 Idaho 759, 727 P.2d 1187 (1986), neither of which had been decided prior to the time that the trial judge made his initial order requiring of Sanchez a remittitur of $400,000.00, or face a new trial, *Dinneen v. Finch,* 100 Idaho 620, 603 P.2d 575 (1979), was the last recent case to discuss the appellate standards of review of a trial court order granting the extraordinary relief of additur or remittitur.

*Dinneen's* discussion of the appellate review of trial court orders ruling on motions for new trials was based largely upon the unanimous opinion authored by Justice Shepard in *Meissner v. Smith,* 94 Idaho 563, 494 P.2d 567 (1972):

> Moreover, as both parties to this appeal have recognized, 'This court is firmly committed to the rule that a trial court possesses a discretion to be wisely exercised in granting or refusing to grant a new trial and that such discretion will not be disturbed on appeal unless it clearly appears to have been exercised unwisely and to have been manifestly abused.' *Sanchotena v. Tower Co.,* 74 Idaho 541, 546, 264 P.2d 1021, 1024 (1953); *Meissner v. Smith,* 94 Idaho 563, 494 P.2d 567 (1972). *Blaine v. Byers, supra* [91 Idaho 665, 429 P.2d 397 (1967) ]; *Rosenberg v. Toetly, supra* [93 Idaho 135, 456 P.2d 779 (1969) ].

*Dinneen v. Finch, supra,* 100 Idaho at 626, 603 P.2d 575. In authoring the *Meissner* opinion, Justice Shepard placed substantial reliance on *Blaine v. Byers,* 91 Idaho 665, 429 P.2d 397 (1967), which was decided just shortly before Justice Shepard was elected to the Supreme Court. The quotation above utilized in Justice Shepard's *Meissner* opinion was taken directly from *Blaine v. Byers,* at page 667, 429 P.2d 397. Justice Shepard also quoted approvingly two

other passages from that case in his *Meissner* opinion:

> It has been stated '[the] [a]mount of damages is a question of fact, which is for the jury in the first instance and secondly for the trial judge on a motion for a new trial.' *Blaine v. Byers,* 91 Idaho 665, 670, 429 P.2d 397, 402 (1967).

It is also stated:

> On the other hand, however, the trial judge should not substitute his opinion on the amount of damages for that of the jury. [citations omitted] Additionally, *the general rule* which prevails in this jurisdiction *is that a motion for a new trial should not be granted unless it appears that a different result would follow a retrial. Blaine v. Byers, supra* at 671, 429 P.2d at 403.

*Meissner v. Smith,* 94 Idaho at 565, 494 P.2d at 497 (emphasis supplied).

What comes out of an attentive reading *of Dinneen* is that this Court's standard of review of trial court rulings on new trial motions is firmly entrenched. Only when it is the conclusion of this Court that the trial judge has not exercised his discretion wisely, and thus abused it, will this Court interfere.

This standard was reaffirmed seven years after *Dinneen* in *Quick v. Crane,* 111 Idaho 759, at 768–769, 727 P.2d 1187, at 1196–1197 (1986). There Chief Justice Donaldson in discussing the function of a trial court in ruling on motions for new trials relied primarily on *Dinneen,* quoted from it extensively and concluded on the matter of the deference due a jury verdict as follows:

> When the trial judge goes through the same evaluative process of assigning a damage award to the parties upon a motion for a new trial under I.R.C.P. 59(a)(5), he draws upon his experiences with previous cases involving general damages and comes up with a figure he believes is fair and just. Obviously, he has a much better idea of what the scope and limitations on such damages may be. His figure of damages will often be different from that of the jury's. *But,* since it is a jury function to set the

damage award based on its sense of fairness and justice, the trial judge must defer to the jury, *unless* it is apparent to the trial judge that there is a great disparity between the two damage awards and that disparity cannot be explained away as simply the product of two separate entities valuing the proof of the plaintiff's injuries in two equally fair ways.

In other words, if the trial judge discovers that his determination of damages is so substantially different from that of the jury that he can *only* explain this difference as resulting from some unfair behavior, or what the law calls 'passion or prejudice,' on the part of the jury against one or some of the parties, then he should grant a new trial. How substantial this difference must be is impossible to formulate with any degree of accuracy. It will necessarily vary with the factual context of each case and the trial judge's sense of fairness and justice. Frequent characterizations have included the idea that the disparity must 'shock the conscience' of the trial judge or lead him to conclude that it would be 'unconscionable' to let the damage award stand as the jury set it. *Gibson v. Western Fire Ins. Co.,* [210 Mont. 267] 682 P.2d 725 (Mont.1984); *Mammo v. State,* 138 Ariz. 528, 675 P.2d 1347 (1983). These characterizations, of course, do little more than restate the trial judge's discretionary perspective but are, nonetheless, frequently employed in other areas of the law and, therefore, may be useful to the trial judge.[1]

*Quick v. Crane, supra,* at 769–770, 727 P.2d 1187 (emphasis in original).

As stated earlier herein, on appellate review, a first concern is whether the trial judge did give proper deference to the jury verdict. If not, then this court must decide whether the failure to do so was an abuse of discretion. Our opinion in *Quick v. Crane* expanded on *Dinneen* by taking recourse to *Sheets v. Agro–West, Inc.,* 104 Idaho 880, 664 P.2d 787 (Ct.App.1983), quoting first from the opinion authored by Judge Walters, and in turn from the opinion authored by Judge Burnett,[2] from which a quotation was adopted and set out at 111 Idaho 772, and ·727 P.2d 1200.

Although our opinion in *Quick v. Crane* merely repeated the often-made statement that trial court rulings will be upheld "unless the court has manifestly abused the wide discretion vested in it," the Court of Appeals provided us with a sound usable definition of *discretion* as compared to judicial discretion:

'Discretion' has been defined as a power or privilege to act unhampered by legal rule. Black's Law Dictionary at 553 (rev. 4th ed. 1968). However, 'judicial discretion' is a more restrained concept. Lord Coke is said to have defined judicial discretion as an inquiry into 'what would be just according to the laws in the premises.' *Id.* Judicial discretion 'requires an actual exercise of judgment and a consideration of the facts and circumstances which are necessary to make a *sound,* fair, and just determination, and a knowledge of the facts upon which the discretion may properly operate.' 27 C.J.S. *Discretion* at 289 (1959). Discretion which violates these restraints is discretion abused.

*Sheets, supra,* 104 Idaho at 887, 664 P.2d 787. In speaking further to judicial discretion, the Court of Appeals amplified as follows:

**1.** Other than for the dissent of Justice Shepard, *Dinneen* was a unanimous opinion, and having Justice Bakes in the majority was to me personally rewarding. The essence of Justice Shepard's dissent as I saw and see it was not directed at the rules of law recapitulated from previous cases, but rather was his belief that the trial judge in that case "allowed the jury verdict to stand as the result of its resolution of the conflicting evidence." 100 Idaho at 628, 603 P.2d at 583. He cited in support of his view the very

cases which supported the *Dinneen* opinion, one of which he had authored (*Meissner*) and one of which he joined (*Rosenberg v. Toetly*).

**2.** Our opinion in *Quick v. Crane* refers to Judge Burnett's opinion as being a "unanimous concurring opinion." Because the other two judges joined the opinion, it is actually a second opinion for the Court as observed by West Publishing Co. in preparing headnotes.

This exercise of adjudicative discretion has a substantial impact upon the litigants. It deprives the prevailing party of the benefit of victory, and it relieves the losing party of the burden of defeat. It confronts the parties with the prospect of investing considerable time, effort and money in a second trial. When a second trial does occur, it consumes the limited resources of our courts and disrupts the private lives of another set of jurors. Although an order for a new trial may not infringe upon trial by jury in a constitutional sense, it certainly represents a judicial invasion of the province of the first jury which sat in the case.

*Sheets, supra,* at 888, 664 P.2d 787.

Of interest in regard to what has been recently written on the subject of judicial discretion, over 75 years ago District Judge Walters in writing for the then three-member Supreme Court which included Justices Ailshie, Sullivan, and Walters, put it much the same as did Chief Justice Shepard in *Meissner v. Smith.* Judge Walters wrote:

> The trial judge sees the witnesses on the witness-stand, observes the manner of their testifying, notes their apparent candor or fairness, or the want of it; hears the argument of counsel, and, in short, is in possession of many sources of information valuable in an inquiry as to whether justice has miscarried or not, and which cannot be made to appear in the record of the case which comes to the appellate court; and appreciating such fact, appellate courts have so frequently held, that it may be announced as settled law, that trial courts possess a discretion to be exercised wisely in the granting or refusal of new trials, and that such discretion will not be by the appellate court disturbed unless it manifestly and clearly appears to have been exercised unwisely and to have been manifestly abused.

*Say v. Hodgin,* 20 Idaho 64, 68, 116 P. 410, 411–412 (1911).

> [I]f the trial judge discovers that his determination of damages is so substantially different from that of the jury that he can *only* explain this difference as resulting from some unfair behavior, or

what the law calls "passion or prejudice," on the part of the jury against one or some of the parties, then he should grant a new trial.

*Quick v. Crane,* 111 Idaho at 769, 727 P.2d at 1197 (emphasis in original).

Application of that standard from *Quick* makes it abundantly clear that the $400,000, or 29 percent, difference between the jury's award and the judge's figures was not so substantial that the difference could *only* be explained by passion or prejudice. In fact, the difference in the numbers resulted from, among other things, the judge's use of a 50 percent impairment rating, setting no figure whatever for loss due to expenses for obtaining of household services, etc. To use the *Quick* language, the difference was "simply the product of two separate entities valuing the proof of the plaintiff's injuries in two equally fair ways." Far from finding that the jury was actuated by passion or prejudice, or that there was even an appearance of passion or prejudice, the trial judge went out of his way to praise the diligence and even-handedness of the jury:

> I was impressed with the jury, I think. I thought we had a very well selected jury. I thought they were a good cross-section of age, income, occupations, intelligence, certainly *conscientious. I don't think I could say I've had a finer jury in any case* and that made me extremely uncomfortable from that standpoint, to have to go back and second-guess.

*Sanchez I,* 112 Idaho at 616, 733 P.2d at 1241 (emphasis in original).

The inconsistencies of the trial court's written opinion were not resolved on remand—but rather compounded—by retaining it and adding the language which our *Sanchez I* opinion noted as missing. The inclusion of those words did not amount to the findings which were required, and did not provide the reasoning or reasons displaying the wise exercise of a judicial discretion. *Sheets v. Agro–West, supra, Quick v. Crane, supra.* One cannot persuade oneself that the trial court's written decision, as revised on remand, is internally

consistent. Rather it is internally inconsistent.

The most glaring inconsistency is the lower court's ruling, under I.R.C.P. 59(a)(6) that there "was clearly sufficient evidence to support both the verdict in plaintiff's favor on the issue of liability *and the amount of damages awarded to him.*" *supra,* p. 5 (emphasis added). Our prior cases have established that a verdict may not be set aside by the trial court where it is supported by substantial competent evidence. On a motion for a new trial, a judge has the power to order a new trial only if the verdict is against the clear weight of the evidence, a much higher quantum of evidence than that contemplated by the substantial competent evidence standard. *See Quick v. Crane, supra.* It follows that a ruling that a verdict on liability and damages is supported by the evidence under I.R.C.P. 59(a)(6) means that the verdict is supported by the clear weight of the evidence. A ruling that "clearly sufficient evidence" supports the jury's assessment of damages unequivocally requires that a trial court give deference to the jury.

One can only wonder, then, how a jury's verdict on damages can be supported by the clear weight of the evidence and, yet said to be the result of passion or prejudice? Clearly it cannot, and thus the district court's order here under review remains highly suspect.

The proper process to follow when a trial court is moved to review a jury award for excessiveness is well-established. In *Mendenhall v. MacGregor Triangle Co.,* 83 Idaho 145, 358 P.2d 860 (1961), Justice McFadden wrote for a unanimous Court:

> The determination of the question of excessiveness of an award by the jury first requires of the trial judge an examination as to the sufficiency of the record to sustain the award; *then if he does determine the record is insufficient to sustain the award,* he must next determine the amount of the award the record does sustain.

83 Idaho at 150, 358 P.2d at 862 (emphasis added). This language has been re-affirmed in *Blaine v. Byers,* 91 Idaho 665, 429 P.2d 397 (1967), again in *Meissner v. Smith,* 94 Idaho 563, 494 P.2d 567 (1972), and more recently in *Dinneen v. Finch,* 100 Idaho 620, 603 P.2d 575 (1979). The clear reading of Justice McFadden's opinion in *Mendenhall* is that if the trial judge determines that the verdict is supported by the record, then the inquiry is at an end. *Claimed excessiveness of damages does not become an issue unless the verdict is not supported by the weight of the evidence. A verdict cannot both be supported by the weight of the evidence and at the same time be declared the product of passion or prejudice.*

In reversing the trial court, we noted that missing from the trial court's memorandum decision was any "finding that the amount of the jury verdict 'appeared to have been given under the influence of passion or prejudice,' " and we directed that the trial judge "enter findings of fact as to whether he was in fact shocked by the jury award, or found such award unconscionable ..." 112 Idaho at 616, 733 P.2d at 1241. On reflection, it is seen that the Court should have attached some definitions. "Unconscionable" as a word of art is used only in connection with bargains reached in contract law, *Black's Law Dictionary* 5th ed., and the word in general parlance is applicable when evaluating damage awards. Webster provides two applicable meanings: (1) Not guided by conscience; and (2) Shockingly unfair or unjust. "Conscience," according to Webster connotes: (2) The thought of a feeling of obligation to do right; and (2) the expression of something done in all fairness, *i.e.,* "in all conscience," "in good conscience," "in conscience."

*Black's Law Dictionary* 5th ed., is of the same vein as Webster, and provides: "The moral sense of discriminating between right and wrong *as particularly applied to one's perception of his own conduct.*"

After the trial judge in his initial order of January 7, 1985, made his review of the evidence, thus "weighing" it as he worded it, he stated, "I cannot in good conscience, come within $400,000 of the jury's verdict."

Using either Webster or *Black's,* it is clear that the judge's own moral sense was such that, had he been any one of the 12 jurors, or had the issue been submitted to him, he would have felt unfair in awarding damages in excess of $950,000.00, *i.e., his own perception of his own conduct.* That was a far cry from declaring that the jury had acted unconscionably, or, not guided by any conscience, or *shockingly* unfairly or unjustly. As a matter of fact, in *January of 1985,* after praising and commending the jury, and after having considered the same evidence which was before the jury in its deliberations, *he declared the jury's damage award "understandable."* In January of 1985, the trial judge's assessment of the two different figures arrived at—one by the jury, and one by him, was absolutely within the confines of the language in *Quick v. Crane,* 111 Idaho 769, 727 P.2d 1197. The difference was "simply the product of two separate entities valuing the proof of the plaintiff's injuries in two equally fair ways." It should not have surprised the trial judge, and in turn likewise not surprised this court, that 12 jurors from all walks of life, might award more damages than one jurist dedicated to but one walk of life. In fact, the judge himself did not profess to be surprised. Even stranger than that, when invited by this Court's directive to declare that he was shocked by the amount of the jury's award, he could not and would not do so, saying instead:

> **On line 25 of page 5 through line 14 of page 6 of my Memorandum Decision I tried to explain why I was not 'shocked' by the verdict. Unfortunately, instead of saying I was not 'shocked' by the verdict, I stated "the large verdict was understandable." So that it is clear, I**

> **would add the words 'and it did not shock me' after the word 'understandable' on line 14 of page 6.**

R., p. 138.[3]

The trial judge's 1985 decision made no mention whatever of passion or prejudice other than to utilize it as a caption for Part II where he addressed the I.R.C.P. 59(a)(5) motion. Although the trial judge's conscience was self-admittedly not shocked by the jury's award, he nevertheless proceeded to accept this Court's invitation to find the jury's damage award unconscionable:

> However, in then stating at line 18 on page 6 of my Memorandum Decision that "I cannot in good conscience come within $400,000 of the jury's verdict," I meant that I found the jury's award of $1,350,000 to be "unconscionable" in *my* judgment. So that it is more clear, I would add the words "and I find such an award unconscionable" after the word "verdict" on line 19 of page 6. Therefore, whether a required finding, or only a suggestion of a measuring stick, there need now be no mistake as to what was intended in this regard.

R., p. 138.

This delayed (28 months) interpretation of what he meant in January 1985 as to what he could not do in good conscience is *per se* contradictory to his statement that his own conscience was not shocked by the amount of the jury's award. To say, as he brought himself to do in 1987, that the jury's award was unconscionable was the same as describing it "shockingly unfair or unjust." Yet at the same time he has belatedly said of the jury verdict that it did *not* shock him.

---

**3.** The trial judge's January 1985 memorandum decision on this point in full was this:

> I have never tried a case which was more thoroughly prepared for trial nor more skillfully presented, including the effective use of visual aids. The plaintiff is a handsome man, likeable and appealing, who obviously made a very favorable impression on co-workers as well as doctors, psychologists, therapist, and other professionals who worked with him. His attending physician was exceptionally competent and knowledgeable in his field

> who had available for viewing detailed photos of most stages of his surgeries and medical treatment of the plaintiff. He had taken numerous photos to assist him in lectures on the surgical repair of hands. I cannot say that I have ever witnessed a better prepared or more thorough and skillful representation by defense counsel either, but the chips here just seemed to be stacked heavily in plaintiff's favor. Accordingly, the large verdict was understandable.

> R., p. 42–43.

Moreover, that which he wrote in 1985 was *not* an assessment of a conscienceless jury verdict, but was, pure and simple, an evaluation of the highest amount to which his own personal conscience would allow him to go. This internal inconsistency in his own decision is unacceptable on appellate review. And, it must be remembered that it was on the inconsistent statement as to what he meant by his own good conscience in 1985 that in 1987 he justified making the initial requisite finding as to passion and prejudice affecting the jury's verdict:

> After I stated on line 20 of page 6 of my Memorandum Decision that the $400,-000 difference between what I would award after weighing the evidence and that the jury awarded was a 'substantial difference,' I did not follow up with the appropriate specific finding. I would add after 'difference' on line 12, 'and the disparity between the jury's award and what this court would have awarded is so great as to suggest that the award is what might be expected of a jury acting under the influence of passion or prejudice.'

R., p. 138–139.

This finding, or as the trial judge put it, "suggestion of a measuring stick," while it might have been acceptable and binding on this Court had it been laid before us in the record on the first appeal—*absent, of course, the trial judge's concession that the amount of the verdict was understandable* and that, *"There was clearly sufficient evidence to support both the verdict in plaintiff's favor on the issue of liability and the amount of damages awarded to him."*—should leave any court with no alternative but to hold that judicial discretion was unwisely exercised in ordering a new trial unless Sanchez would accept an award $400,000 less than a unanimous and outstanding jury had awarded him.

Omitted in both versions of the trial court's memorandum decision, *i.e.,* the original dated January 14, 1985, and the amended version dated May 27, 1987, is any intimation of a belief that on a second trial a new jury's assessment of damages would differ in result from the first jury.

> The general rule which prevails in this jurisdiction is that a motion for a new trial should not be granted unless it appears that a different result would follow a retrial.

*Meissner v. Smith,* 94 Idaho at 565, 494 P.2d 567. This cautionary general rule is necessary due to the power of the judge's exercise of discretion and its effect upon the parties.

> This exercise of adjudicated discretion has a substantial impact upon the litigants. It deprives the prevailing party of the benefit of victory, and it relieves the losing party of the burden of defeat. It confronts the parties with the prospect of investing considerable time, effort and money in a second trial. When a second trial does occur, it consumes the limited resources of our courts and disrupts the private lives of another set of jurors. Although an order for a new trial may not infringe upon trial by jury in a constitutional sense, it certainly represents a judicial invasion of the province of the first jury which sat in the case.

*Sheets, supra,* 104 Idaho at 888, 664 P.2d 787.

Again, where Idaho case law has consistently required of a trial judge that he must anticipate a different result on a second trial, an exercise of judicial discretion which wholly ignores that factor cannot be said to be wise, especially in circumstances such as are presented here, where the trial court declared the verdict "understandable."

What I have now just written is admittedly in all probability an exercise in futility insofar as this case is concerned. Because of the compromise opinion and the application of the law of the case doctrine to the second round of proceedings in the district court, it was impossible for me to not concur in Justice Johnson's Part II opinion.

SHEPARD, Chief Justice, concurring and dissenting.

I concur in that portion of what is evidently a plurality opinion which affirms the

action of the trial court, giving plaintiff-appellant Sanchez the option of accepting a reduction in the jury verdict, or in the alternative granting a new trial.

As to that portion of the opinion which awards "post-judgment interest," I dissent.

The genesis of this prolonged litigation was the accident suffered by plaintiff-appellant Sanchez in November 1982. Action was initiated by Sanchez, resulting in a jury verdict upon which judgment was entered in October 1984 in the amount of 1.35 million dollars. By order dated January 25, 1985, defendant's motion for a new trial was granted "unless a remittitur was accepted," reducing the verdict and the judgment entered thereon to the sum of $950,-000.00. As is correctly set forth in the opinion of Bistline, J. quoting the trial court's ruling, "[t]he order dated February 25, 1985 ... which granted a new trial unless a remittitur was accepted, effectively vacated the judgment and amended judgment previously entered on the jury's verdict."

Plaintiff-appellant Sanchez then initiated an interlocutory appeal, asserting error in the trial court's action in vacating the jury verdict, and in the alternative ordering a reduction or the granting of a new trial. It has not been until today's opinion that either the parties or the trial judge have known the outcome of that original interlocutory appeal. It should be noted, as correctly pointed out in the opinion of Bistline, J., that at a later time the defendant Galey joined as a cross-appellant, asserting error at trial. However, in the opinion of this Court of October 1986, the actions of the trial court were affirmed as they related to the cross-appeal of Galey.

With all due respect, it is my view that from that point forward the cause entered a Lewis Carroll type of world. Nothing is as it appears to be, and sense becomes nonsense. The majority appears to uphold the order of the trial court reducing the jury verdict to $950,000.00, or the trial court will order a new trial. More than four years have passed since the entry of that trial court order. There is still no indication in the record before us whether or not plaintiff will accept that remittitur, or whether a new trial will be granted. While the record does not so indicate, the question raised is, of course, academic. As a result of what I perceive to be the intransigence of this Court, "post judgment" interest has now been decreed by this Court which will, within a few dollars, restore plaintiff Sanchez not only the original jury award of 1.35 million dollars, but add another $200,000.00.

Thus, as best I perceive the result mandated by the opinion of this Court, the non-existent "judgment" of the district court awarding $900,000.00 to the plaintiff is affirmed, together with interest in the amount of approximately $620,000.00. (*See* 1981 Idaho Sess. Laws ch. 157; 1987 Idaho Sess. Laws ch. 278.) Upon remand I will await the actions of the parties and the court with more than the usual curiosity.

Will plaintiff withdraw its motion for a new trial? Will defendant now move for a new trial? Will the trial court, on its own motion, grant a new trial? What are the time strictures on any such actions? I suggest that the opinion of this Court has placed itself, the trial court, and the parties in an imbroglio from which none can be extricated.