860 P.2d 653

**Barbara LUBCKE, Plaintiff–Respondent,**

v.

**BOISE CITY/ADA COUNTY HOUSING AUTHORITY, a corporation, Judith Worrell, individually and in her official capacity as Executive Director of the Boise City/Ada County Housing Authority, Defendants–Appellants.**

No. 18691.

Supreme Court of Idaho,
Boise, October 1992 Term.

Sept. 9, 1993.

Rehearing Denied Oct. 27, 1993.

Elam, Burke & Boyd, Boise, for defendants-appellants. Bobbi K. Dominick argued.

Lynn, Scott, Hackney & Jackson, Boise, for plaintiff-respondent. John C. Lynn argued.

BISTLINE, Justice.

## Statement of Facts

The respondent, Barbara Lubcke ("Lubcke"), was hired by the Housing Authority in 1981. Lubcke began her employment with the Housing Authority as a secretary to the executive director. Eventually, Lubcke was promoted to the position of a housing representative where she was responsible for the administration of the low-rent public housing program. Her duties included taking applications for housing, maintaining waiting lists, determining an applicant's eligibility for public housing, keeping updated on pertinent federal regulations, monitoring occupancy and continuing eligibility of tenants, and various paperwork associated with these duties. Lubcke maintained her position as a housing representative until her termination in 1986.

During Lubcke's tenure with the Housing Authority there were several personnel changes in the position of executive director. When she began working for the Housing Authority, Ernest Ludwig was the executive director. Subsequently, Lubcke was supervised by Moises Torrescano. After Torrescano, Owen Krahn was the executive director. During Krahn's tenure as executive director, there was frequent highly-publicized turmoil surrounding the Housing Authority. Lubcke, along with two other employees of the Housing Authority, refused to sign a letter of support for Mr. Krahn, and Lubcke became publicly critical of Mr. Krahn's leadership. After Krahn left, Judith Worrell became the executive director.

On October 24, 1986, after some "counseling" sessions between defendant Worrell and Lubcke, respondent was terminated from her position at the Housing Authority. At that time she received at least one list of purported reasons for her termination. According to Worrell, Lubcke received two letters listing the reasons for termination when she was terminated. Lubcke claimed she never saw the second letter until it arrived in the mail. Worrell claimed that she mailed the second letter to Lubcke only because Lubcke forgot to take it with her after she was fired and ousted.

After meeting with Worrell, Lubcke submitted written responses to the charges, requested specific instances of misconduct, and requested a grievance hearing before the board of directors of the Housing Authority.

On December 2, 1986, Worrell and Robert Hudgins wrote a letter to Henry Berg, the Regional Inspector General of HUD wherein Worrell and Hudgins outlined what they believed to be Lubcke's conduct in violation of HUD statutes and regulations, i.e., revealing restricted information, acquiring property from tenants, and failure to follow regulations regarding waiting lists and qualifications of tenants. Additionally, a full investigation was requested. HUD took no action.

Following her 1986 termination by the Housing Authority, Lubcke obtained employment with the Idaho Department of Insurance. In July of 1987, Lubcke accepted a position with Boise Physical Therapy, where she earned more per hour than when working for the Housing Authority.

### Procedure

On June 27, 1989, Lubcke filed an amended complaint against the Housing Authority and Judith Worrell listing six causes of action: Count One, breach of contract; Count Two, breach of covenant of good faith and fair dealing; Count Three, defamation; Count Four, deprivation of property without due process; Count Five, deprivation of liberty without due process; and Count Six, deprivation of freedom of speech. In an amended complaint she included Robert Hudgins, the chairperson of the board of the Housing Authority, as a defendant in Count Three.

On September 27, 1989, all defendants answered the second amended complaint listing a number of defenses which included the assertion that the alleged acts were not performed under color of state law, the alleged wrongful acts were not performed pursuant to an official policy or custom, absolute immunity, and qualified immunity.

On November 14, 1989, the jury trial commenced. After Lubcke had presented her case-in-chief and rested, defendants moved the district court for a directed verdict. The district court granted a directed verdict in favor of Hudgins as to the defamation claim, and likewise to both defendants as to the claimed breach of the covenant of good faith and fair dealing. After all of the evidence had been presented, defendants moved for an additional directed verdict which was granted only as to the defamation claim.

The court submitted three claims for the jury to deliberate: breach of contract, lack of or failure of procedural due process, and free speech.

The jury returned a unanimous verdict in favor of Lubcke on all three claims. The jury awarded Lubcke $182,703.00 in damages, with $57,703.00 representing the breach of contract claim, $50,000.00 repre-

senting the deprivation of procedural due process claim, and $75,000.00 representing the deprivation of free speech claim.

The defendants then moved the court for judgment notwithstanding the verdict ("judgment n.o.v."), pursuant to I.R.C.P. 50(b), or a new trial, pursuant to I.R.C.P. 59(a)(5), 59(a)(6), and 59(a)(7), or, alternatively, for a remittitur, pursuant to I.R.C.P. 59(a)(5). The court heard oral argument on the defendants' request for costs and fees, all of which were denied, and in addition to which, the court awarded requested costs and fees to Lubcke.

On April 11, 1990, the court entered an amended judgment to conform with its order on the post-trial motions which resulted in Lubcke being awarded an additional $22,255.65 attorney fees and $4,620.17 costs, thus increasing her total award to $209,578.82.

On May 1, 1990, defendants filed their notices of appeal pursuant to Idaho Appellate Rules 11(a)(1), 11(a)(5), and 11(a)(6), appealing from the December 11, 1989, judgment and the April 11, 1990, decision on the post-trial motions.

### Analysis

The appellants raise two primary issues. First is whether the trial court erred in denying the appellants' motion for a judgment n.o.v. or, alternatively, for a new trial on the issue of liability. Second is whether the trial court erred in denying appellants' motion for a new trial on the issue of damages or, in the alternative, for a remittitur. Each of the two issues has several subsidiary issues.

When the district court is moved to grant a judgment n.o.v., the standard is "whether there is substantial evidence upon which the jury could properly find a verdict for the [nonmoving] party." *Quick v. Crane*, 111 Idaho 759, 763, 727 P.2d 1187, 1191 (1986). In *Dinneen v. Finch*, 100 Idaho 620, 603 P.2d 575 (1979), which was adhered to and relied upon in *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986), Chief Justice Donaldson[1] and Justice Bakes[2]

---

1. Chief Justice Donaldson wrote:
 In ruling upon a motion for a new trial premised upon inadequate or excessive damages, the rule the trial court must follow is set forth in *Dinneen v. Finch*, 100 Idaho 620, 603 P.2d 575 (1979):
 'Where a motion for a new trial is premised on inadequate or excessive damages, the trial court *must* weigh the evidence and then compare the jury's award to what he would have given had there been no jury. If the disparity is so great that it appears to the trial court that the award was given under the influence of passion or prejudice, the verdict ought not stand. It need not be proven that there was in fact passion or prejudice nor is it necessary to point to such in the record. The appearance of such is sufficient. A trial court is not restricted to ruling a verdict inadequate or excessive "as a matter of law." *Blaine v. Byers, supra.* [91 Idaho 665, 429 P.2d 397 (1967)]. Additionally, the rule that a verdict will not be set aside when supported by substantial but conflicting evidence has no application to trial court ruling upon a motion for a new trial. *Blaine, supra; Rosenberg v. Toetley,* 93 Idaho 135, 456 P.2d 779 (1969).'
 *Quick v. Crane,* 111 Idaho at 768, 727 P.2d at 1196 (emphasis in original) (*citing Dinneen,* 100 Idaho at 625–26, 603 P.2d at 580–81).
2. Justice Bakes wrote:
 *Motions for New Trial under 59(a)(5)*
 I endorse Chief Justice Donaldson's assertion today that our decision in *Dinneen v.*

*Finch, supra,* provides the controlling legal principles regarding the role of trial courts in ruling on motions under 59(a)(5) and the role of this Court in reviewing the grant or denial of such motions. As his opinion points out, the holding in *Dinneen* is legally sound and has been followed and applied consistently by this Court, twice in just the last year. *Vannoy v. Uniroyal,* 111 Idaho 536, 726 P.2d 648 (1986); *Black v. Reynolds,* 109 Idaho 277, 707 P.2d 388 (1985). Today's opinion clearly points out the distinction between the post-verdict motions of judgment n.o.v., new trial under 59(a)(6), and new trial under 59(a)(5), and it reaffirms the preeminent role of the standards set forth in *Dinneen* in deciding new trial motions under Rule 59(a)(5).

. . . .

[T]he Court's opinion today does not change the Dinneen standard that 'the trial court must weigh the evidence and then compare the jury's award to what he would have given had there been no jury. If the disparity is so great that it appears to the trial court that the award was given under the influence of passion or prejudice, the verdict ought not stand. It need not be proven that there was in fact passion or prejudice nor is it necessary to point to such in the record. The appearance of such is sufficient.' *Dinneen v. Finch,* 100 Idaho at 625–26, 603 P.2d at 580–81.

both wrote. Therein our scope of review for this issue is well stated:

In determining whether a ... judgment n.o.v. should have been granted, the appellate court applies the same standard as does the trial court which passed on the motion originally.

*Quick,* 111 Idaho at 764, 727 P.2d at 1192.

Our task, then, in reviewing this issue is to "review the record of the trial court below and draw all inferences from the evidence in a light most favorable to [respondent] to determine if there was substantial evidence to justify submitting the case to the jury." *Quick,* 111 Idaho at 764, 727 P.2d at 1192. In other words, this Court must ask "what evidence tends to support respondents, with all reasonable inferences and intendments to be drawn in favor of respondents...." *Conley v. Amalgamated Sugar Co.,* 74 Idaho 416, 424, 263 P.2d 705, 709 (1953).

Likewise, the Court held in *Quick* that

[i]n reviewing the denial of a motion for a new trial our standard [of review] is well settled. This Court has been consistent in recognizing the trial court's important function in passing on motions for new trial and upholding the trial court's grant or denial of such motions unless the court has *manifestly* abused the wide discretion vested in it.... The trial court is in a far better position to weigh the demeanor, credibility, and the persuasiveness of all the evidence. Appellate review is necessarily more limited. While we must review the evidence, we are not in a position to "weigh" it as the trial court can.

*Quick,* 111 Idaho at 770, 727 P.2d at 1198 (emphasis in original, citations omitted).

Notwithstanding our deferential standard of review, the Housing Authority and Worrell assert there are several reasons why a judgment n.o.v. or a new trial should have been granted.

*Quick v. Crane,* 111 Idaho at 785–86, 727 P.2d at 1213–14, *citing Dinneen,* 100 Idaho at 625–26,

## A. THE TRIAL COURT DID NOT ERR BY REFUSING TO GRANT A JUDGMENT N.O.V. OR A NEW TRIAL ON LIABILITY.

We state each contention and our disposition thereof:

### 1. There was sufficient evidence to show that the Housing Authority breached the employment contract.

█ Under the Housing Authority's personnel manual, Lubcke was entitled to continued employment unless she was terminated for "unsatisfactory service" or for a "substantial violation" of a regulation. The Housing Authority argues that it articulated "many legitimate reasons for termination, consisting of conduct constituting unsatisfactory performance or a substantial violation of HUD regulations[,]" at trial which were not rebutted by Lubcke. In her replication which constituted a thorough refutation, Lubcke clearly out-argued the Housing Authority, or so the trial judge found in a well-written opinion which this Court approves and places before the litigants and the public:

In this case, she brought forth evidence showing that she had received positive employment evaluations, additional training [at a substantial cost to the Housing Authority], was devoted to her work and the tenants and had performed her job duties in a satisfactory fashion. At least one of the former board members felt that the plaintiff would have been a good interim director.

. . . .

While there is no direct evidence that the plaintiff was sanctioned for speaking out, there rarely is, as several courts have noted. *E.g., Nekolny v. Painter,* 653 F.2d 1164 (7th Cir.1981); *Missouri National Education Association v. New Madrid County R-1 School District,* 810 F.2d 164 (8th Cir.1987). Since her criticism of Owen Krahn was well known at the Authority, and it is the only remarkable event in her work life with the Au-

603 P.2d at 580–81.

thority, it could be reasonably inferred that she was fired as a result of exercising her First Amendment rights. The plaintiff had already survived other changes of administration. The only intervening event was her expression of criticism to the Mayor and an Ada County Commissioner and members of the Authority's Board and the letter to the editor.... The jury found that she engaged in protected speech and lost her job because of it. It cannot be fairly said that there was no basis for their conclusion nor that it constitutes a miscarriage of justice.

There is substantial, albeit conflicting evidence, to support the jury's verdict.

The defendants are not entitled to a judgment n.o.v. The standards for a new trial permit a more flexible analysis. Considering the evidence in this case and the testimony given, while it appears to me that the plaintiff was not responsive to the direction provided by her new supervisor and made some errors in judgment, I cannot honestly say that the jury's determination on the breach of contract was a miscarriage of justice.... It certainly seems to me that [the jury's] verdict is one of reasonable conclusions which could have been drawn from the evidence. While I did evaluate the evidence somewhat differently, the verdict was not a miscarriage of justice. There are no sufficient grounds for a new trial.

R. 293–96.

We agree with the district court, and on our review of the record, which is generally in the light most favorable to the plaintiff, we conclude that there was sufficient substantial evidence to support the court's submitting the case to the jury and, in turn, to support all aspects of the jury's verdict. It is clear that the jury simply did not believe that the "many legitimate reasons" alleged by the Housing Authority were truthfully the basis of Housing Authority's summary discharge of Lubcke. Accordingly, we conclude that the district court did not err in denying the defendants' motion for judgment n.o.v. or new trial. *Quick v. Crane,* 111 Idaho at 763, 727 P.2d at 1191.

2. **There was sufficient evidence to show that the Housing Authority was acting under color of state law for purposes of the § 1983 claim.**

In part, 42 U.S.C. § 1983 reads:

Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

Thus, in order to make a prima facie case under § 1983, Lubcke was required to show that the respondents were acting under color of state law. The Housing Authority asserts that Lubcke did not meet her burden. It argues that when state officials take an action mandated by federal regulations, they act under the color of federal, not state, law and are therefore not subject to liability under § 1983. *See Rosas v. Block,* 826 F.2d 1004 (11th Cir. 1987). According to the Housing Authority, the actions taken to terminate Lubcke were based upon federal law in that the personnel manual (under the provisions of which Lubcke was allegedly fired) was approved by HUD; moreover, she was fired in part for alleged violation of HUD regulations.

We need not further address this contention because to the extent the Housing Authority defended the termination by alleging Lubcke violated HUD regulations, the jury found those allegations were not the true cause for the dismissal. The jury in a special verdict clearly found that Lubcke was terminated for her exercise of her First Amendment rights. We have already determined there is sufficient evidence in the record to support the jury's determination. Accordingly, there was sufficient evidence for the jury to find that the Housing Authority was acting under color of state law and the district court did not err in denying the appellants' motion for judgment n.o.v. or a new trial on this basis.

**3. Jury instruction # 18(B), which addressed the official policy or custom requirement as to the procedural due process claim against the Housing Authority, adequately informed the jury of the applicable law.**

■ A local governmental entity is not liable under § 1983 unless there has been a violation of rights caused by the execution of a government's policy or custom, whether that policy is made by the lawmakers or by those whose edicts or acts may fairly be said to represent official policy. *Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *Monell* was later clarified in *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). There, the Court held that official policy liability could be imposed for a single decision by municipal policy makers under certain circumstances. It also noted that an act may be tailored to a particular situation and need not be intended to apply to other situations and still be official policy for purposes of § 1983. Official policy may be established by an official who is "responsible for establishing final governmental policy respecting such activity." Liability, however, "attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives" by a responsible official. 475 U.S. at 483, 106 S.Ct. at 1300.

In a more recent case, the Supreme Court noted that the "identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge *before* the case is submitted by the jury." *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 736, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989).

> Once those officials who have the power to make official policy on a particular issue have been identified, it is for the jury to determine whether *their* decisions have caused the deprivations of rights at issue by policies which affirmative command that it occur ... or by acquiescence in a longstanding practice or custom which constitutes the "standard operating procedure" of the local governmental entity.

491 U.S. at 737, 109 S.Ct. at 2723 (emphasis in original).

■ The Housing Authority argues that the court erred giving instruction # 18(B). That instruction provides that

> Regardless of whether Judith Worrell individually is liable to Plaintiff for discharging Plaintiff without a hearing, the Housing Authority, itself, is liable to Plaintiff if the failure to give a meaningful hearing arose out of official action. Therefore, if you find that the Plaintiff suffered an unconstitutional deprivation as the result of official actions of the Board of Housing Authority, then the Housing Authority is liable to plaintiff for her damages as defined in these instructions.

The Authority argues the court should have defined the term "official action" and the district court erred by refusing to give the Housing Authority's proposed instruction # 31. Proposed instruction 31 stated that the Authority could be found liable only if Lubcke was deprived of her constitutional rights and "such deprivation was done pursuant to a governmental custom, policy, ordinance, or regulation."

First, we find instruction 18(B) to be a correct statement of the law so far as the definition of official action goes. As the district court explained:

> My reason for giving plaintiff's instruction, which is now court's instruction 18B, is that it appears to me from the facts of the case that what is being alleged is not a case of vicarious or imputed liability arising from policy, but instead arises from the Board's actions, and directly it is alleged to be violating the plaintiff's right to a hearing.
>
> ... [I]t's my view that this case is not a vicarious or imputed case with respect to the Housing Authority's actions at the hearing, but is a case where direct liability is asserted against the board for actions taken in the scope of their employ-

ment but which allegedly violated the plaintiff's constitutional rights. Tr.Vol. 8 at 1190. We agree with the district court that there was no evidence that the Board was acting according to custom, established policy, ordinance, or regulation. Thus, the references thereto in defense proposed instruction 31 are mere surplusage. Lubcke's theory of the case was that the events surrounding her termination were particularly tailored to her case, but because the Board was involved in making those deliberate choices which violated her constitutional rights, those decisions became the official policy which established municipal liability pursuant to *Pembaur*. Where the district court found that the Board was the official policy maker for the Housing Authority, it necessarily follows that any official action taken by the Board would be official policy pursuant to *Monell* and *Pembaur*. Instruction # 18(B) adequately instructed the jury that it must find the actions of the Board of Directors were both "official actions" and "unconstitutional" actions and thus adequately informed the jury of the elements of *Monell* liability under the facts of this case.

■ The Authority also argues that the court should have made it clear that official action is a requirement for liability on the free speech claim. We agree but conclude the failure to so instruct the jury was harmless error. The special verdict shows that *the jury unanimously found that Lubcke was terminated by the Housing Authority because of her exercise of her First Amendment rights*. The jury also unanimously found that the Housing Authority deprived Lubcke of her procedural due process right to a fair hearing. Implicit in the jury's finding that there was official action behind the deprivation of due process is the finding that there was official action behind the Board's violation of Lubcke's First Amendment rights. This is so because the same act by the Board, i.e., ratifying Worrell's termination of Lubcke, serves as the factual basis for both the First Amendment and due process claims. In other words, because the jury found that Lubcke's termination for due process violations was the result of official policy it

necessarily also found that the Board's violation of her right to free speech was also the result of the Board's official action. Accordingly, the Housing Authority did not suffer any prejudice from the district court's failure to properly instruct the jury as to the official action predicate of the First Amendment claim.

**4. There was sufficient evidence to show that Lubcke's unconstitutional termination was the result of the official policy of the Housing Authority.**

■ The Housing Authority argues that Lubcke did not establish that the alleged violations of her constitutional rights were proximately related to an official policy per *Monell*. However, Lubcke presented evidence that Worrell, the executive director, and Hudgins, the chairperson of the Board of Directors, drafted the two dismissal letters. The jury could have concluded that Worrell and the Board, through Hudgins, were acting together to mislead Lubcke about the true reason for her termination, which the jury determined to be her exercise of her First Amendment rights. Hudgins also prepared Worrell's response to Lubcke's grievance. The jury could have seen this as further evidence of a concerted effort between the Board and Worrell to deprive Lubcke of her constitutional rights. Further, Hudgins co-authored a letter (Exhibit 12) to the Inspector General of the Department of Housing and Urban Development, which contained what the jury could have concluded were spurious and false charges against Lubcke, done as an attempted cover-up of the illegal termination. We conclude that a rational trier of fact could conclude that the Board, acting through its chairperson, Robert Hudgins, took official action, along with Worrell, to deprive Lubcke of her position because of her First Amendment activities and to deprive her of due process, as will be explained in more detail below.

**5. Lubcke demonstrated that she was terminated without procedural due process.**

■ The Supreme Court in *Cleveland Board of Educ. v. Loudermill*, 470 U.S.

532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), held that when public employees have a protected property interest in their employment, the due process clause requires that, prior to termination, the employees be given: a) *oral or written notice of the reason(s) for the termination,* b) an explanation of the employer's evidence, and c) an opportunity to present their side of the story.

The Housing Authority argues that it is entitled to a judgment n.o.v. because Lubcke did not prove a *Loudermill* violation in two respects. First, it contends that it provided Lubcke with the appropriate procedures when Lubcke and Worrell had an informal meeting whereat Worrell explained the reasons for the discharge and Lubcke had an opportunity to respond. The Authority also notes Lubcke had a formal post-termination hearing before the Board of Directors.

The jury, however, found that Lubcke was not terminated for the reasons given by the Housing Authority. Rather, she was terminated for her First Amendment activities. Thus, Lubcke has never been told the true reason for her termination by the appellants and, therefore, did not have an opportunity to respond meaningfully to that reason—either at the meeting with Worrell or at the meeting before the Board.

Additionally, Lubcke presented evidence that she never had a pre-termination meeting because the meeting with Worrell did not occur until after she had been fired. At that time she was given a written list of reasons for her termination. But, according to Lubcke, she later received another list of reasons for her termination which were different from the reasons in the first list. Obviously, Lubcke did not have the opportunity to respond to the second set of purported reasons at her meeting with Worrell. Additionally, she presented evidence that she was not afforded a meaningful opportunity to respond at the second hearing because the Housing Authority refused to provide her with specific information as to the nature and circumstances of the alleged misconduct.

The above evidence was sufficient to show a deprivation of procedural due process.

■ Second, the Housing Authority argues that Lubcke waived her procedural protections when she told the Board at the post-termination hearing that she did not want her job back. While it is true that Lubcke at first told the Board she did not want her job back "under this administration[,]" she wrote the Board the next day and told them she would be happy to be reinstated.

In light of this evidence, the district court correctly instructed the jury that any constitutional right may be waived and provided a correct definition of waiver. The jury, thus instructed, found Lubcke did not waive her right to procedural due process. We conclude that sufficient substantial evidence sustains the jury's determination of no waiver.

**6. The court's instructions on the requirements of procedural due process correctly stated the law.**

■ The Housing Authority argues that the district court erred in giving instruction # 17 which provided:

In connection with the termination of her employment, the plaintiff was entitled to a hearing before the executive director and the Housing Authority Board. It is implied in her right for hearing that it be a meaningful hearing. She was entitled to a fair hearing which comported with due process. Due process is a flexible concept which depends upon the circumstances of the case. At a minimum, the plaintiff was entitled to notice of the grounds of termination and a fair opportunity to refute them.

R. 250. The Housing Authority contends that the instruction was flawed because it stated that the *Loudermill* due process requirements were "minimum" requirements without stating that compliance with the minimum requirements would satisfy due process. In other words, the Housing Authority argues that the instruction could be read to say that the "minimum" require-

ments might not be enough to provide due process, depending on the "circumstances of the case." We believe, however, the more natural reading of the word "minimum" in this context is: "the lowest possible amount or degree allowable...." Webster's II, New Riverside Dictionary, p. 755 (1988). This is especially so when one reads instruction # 17 in conjunction with instruction # 14. Instruction # 17 tells the jury that Lubcke must prove the following in order to prevail on her procedural due process claim:

First: That she was permanently employed by the defendant government entity;

Second: That she was discharged from that employment;

Third: That she was not given a hearing, nor informed of reasons for the discharge, nor given an opportunity to contest any stated reasons;

Fourth: That as a result of this discharge, she suffered damages.

R. 248.

Thus the instructions read as a whole correctly informed the jury that, if Lubcke was given notice of the grounds for termination and a fair opportunity to refute them then, due process was not violated by the Housing Authority. There was no error in this regard.

## 7. We decline to reach the issue of whether Lubcke presented evidence which showed that she was deprived of liberty without due process.

Even though the Housing Authority argues that Lubcke did not present any evidence to show that she was deprived of liberty without due process, both the Housing Authority and Lubcke appear to agree that this issue is not directly before the Court. "The [Housing Authority] and Worrell agree with Lubcke that no reference was made in the trial court's instructions or the special verdict form to the occupational liberty-interest deprivation claim and that 'for all practical purposes, the liberty interest [claim] was dismissed with the defamation causes of action.'"

Appellant's reply brief at 21 quoting Respondent's brief at 25.

With both parties agreeing that the issue is not before the Court, we decline to address it.

## 8. The court erred by giving instruction # 19, which allowed the jury to consider whether to award damages for loss of reputation.

Instruction # 19 stated in part:
If you find that plaintiff suffered mental or emotional distress, loss of reputation or other damage caused by the denial of an opportunity to contest the charges against her, then you may award such damages which flow naturally from the defendant's actions....

The Housing Authority argues that the district court erred by so instructing the jury. It argues that "[t]o be entitled to loss of reputation damages in connection with [Lubcke's deprivation of property without due process] claim she had to prove that the denial of a pretermination hearing actually caused injury to her reputation and that she was damaged as a result." Brief in Support of Petition for Rehearing at 15. (In doing so, it concedes that reputational damages may be awarded in property-interest deprivation claims as some courts have held. *See, e.g., Busche v. Burkee,* 649 F.2d 509 (7th Cir.1981), *cert. denied* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981).) In essence then, the Authority argues that there was not sufficient evidence to submit the instruction on reputational damages.

While it is clear that "no instruction should be given which tenders an issue that is not supported by the pleadings and such evidence, or which deviates therefrom in any material respect," *Nordquist v. W.A. Simons Co.,* 54 Idaho 21, 27, 28 P.2d 207, 209 (1933), it is equally clear that "[t]he trial court is under a duty to instruct the jury on every reasonable theory recognized by law that is supported at trial." *Everton v. Blair,* 99 Idaho 14, 16, 576 P.2d 585, 587 (1978). We have recently stated that a requested instruction must be given if there is any reasonable view of the evi-

dence to support it. *State v. Thomasson,* 122 Idaho 172, 175, 832 P.2d 743, 746 (1992).

After reviewing the evidence, we find that Lubcke showed that Worrell made disparaging remarks about Lubcke to the tenants of the Housing Authority. However, the fact that these disparaging comments were made does not show that the statements actually damaged Lubcke's reputation. It could be that the tenants who heard Worrell's statements did not believe them or believed them but held Lubcke in as high esteem as before the statements were made. Lubcke did not present any evidence that her reputation was actually damaged by Worrell's remarks, consequently, we conclude that the trial court erred in instructing the jury on reputational damages. *Nordquist,* 54 Idaho at 27, 28 P.2d at 209. And, as it is impossible to determine whether the jury awarded damages for loss of reputation, we vacate the award and remand for a new trial on the amount of damages. Because instruction 19 is limited to the due process cause of action and thus the instruction could not have adversely affected the damage amounts on the other causes of action, the new trial is limited to the due process claim.

**9. Lubcke showed that her right to free speech was infringed.**

■■■ Lubcke claimed that she was terminated for criticizing Owen Krahn, Worrell's predecessor, to the mayor of Boise and to the Ada County Commissioners. The Board members and Worrell testified that they were unaware of these statements. Consequently, the Housing Authority argues, Lubcke did not prove her statements were proximately related to the termination.

The Housing Authority cites no authority for the proposition that there must be direct evidence that its policy makers were aware of the statements in order for Lubcke to prevail. To the contrary, the jury was instructed that the law makes no distinction between direct or circumstantial evidence as to the degree of proof required. As before noted, we believe that the circumstantial evidence presented by Lubcke

was sufficient to sustain the jury's conclusion that she was fired in retaliation for her comments about Krahn.

More particularly, Worrell's claim that she was unaware of Lubcke's criticism of Krahn is refuted by exhibits 2Q and 2P. Those exhibits are copies of Worrell's notes from meetings with Lubcke. In exhibit 2Q, dated September 12, 1986, Worrell wrote that Lubcke told her that a co-worker was trying to discredit Lubcke because of "the Owen Krahn hassle." Worrell wrote in exhibit 2Q, dated September 18, 1986, that Lubcke feared Worrell disliked her "due to the 'Owen Krahn' situation." Those notes show that Worrell was fully aware of Lubcke's criticisms of Krahn well before Worrell fired Lubcke. Moreover, there was circumstantial evidence which showed that Hudgins and Worrell knew about Lubcke's First Amendment activities. Owen Krahn, the fired executive director, was aware of Lubcke's statements. Further, Krahn threatened to fire Lubcke if Lubcke failed to support him. Although Krahn did not terminate Lubcke before his own termination, Krahn did hire Worrell. After Krahn was terminated and Worrell was made executive director, Krahn met with Hudgins and accused Lubcke of misconduct. There was also evidence that Hudgins and Worrell worked closely together on matters relating to Lubcke's termination, including the drafting of the two dismissal letter's as well as the letter to HUD. The jury could have deduced from this evidence that Krahn wanted Lubcke fired because of her criticism of his administration and then enlisted Hudgins and Worrell into that plan.

In sum, there was direct and circumstantial evidence which showed that both Hudgins and Worrell were aware of Lubcke's First Amendment activities. We agree with the trial court that there was sufficient evidence in the record to support the jury's finding.

**10. The district court should not have submitted the question of whether Worrell was entitled to qualified immunity to the jury.**

■■■ Government officials performing discretionary functions generally are

shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Arnzen v. State,* 123 Idaho 899, 904, 854 P.2d 242, 247 (1993). However, officials are charged with the knowledge of the constitutional developments at the time of the alleged constitutional violations, including all available case law. *Lum v. Jensen,* 876 F.2d 1385, 1387 (9th Cir.1989). In order for a right to be "clearly established," the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 639–40, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987).

Worrell first raised the qualified immunity issue in her motion for summary judgment. However, the district court, in its memorandum decision, did not reach the qualified immunity issue due to its dismissal of the 42 U.S.C. § 1983 counts because the pleadings did "not meet the specific requirements of 9(b)³." R. 97. The district court permitted Lubcke to file a second amended complaint. When Lubcke did so, she realleged the § 1983 causes against which Worrell claims the qualified immunity defense. R. 103–09. Worrell did not move the court for summary judgment against the second amended complaint. The issue was not presented to the court for decision again until Worrell's motion to dismiss at the end of Lubcke's case. The district court in denying the motion to dismiss did not explicitly rule on the qualified immunity issue. Curiously, even though Worrell had consistently argued that she was entitled to qualified immunity doctrine as a matter of law, she did not object to the giving of instruction 18A, which submitted to the jury the question of whether the immunity applied under the facts of the case. However, she again argued that she was entitled to immunity as a matter of law in her post-trial motions. Again, the district court did not explicitly address the question.

■■■■■■ Before reaching the arguments on appeal, we note that the issue is properly before us. First, the failure to object to a jury instruction does not preclude challenging that instruction on appeal. *Country Ins. Co. v. Agricultural Dev., Inc.,* 107 Idaho 961, 963–64, 695 P.2d 346, 348–49 (1984). Second, even though the district court did not explicitly address the qualified immunity issue in responding to Worrell's motions to dismiss and post-trial motions, it is implicit in the court's rulings that it rejected Worrell's properly raised immunity claims. Thus the issue has been preserved for appeal. *Compare, State v. Fisher,* 123 Idaho 481, 849 P.2d 942 (1993) (an issue not ruled on below will not be considered on appeal if the issue was never properly presented to the trial court for a ruling).

■■■■■■ Worrell argues on appeal that the question of qualified immunity should not have been submitted to the jury because it is a question of law for the court to decide. Worrell also claims instruction 18A is an erroneous statement of the law in that it includes the element of good faith. The question of whether clearly established law existed at the time of the alleged constitutional violation is a question of law. *Hunter v. Bryant,* —— U.S. ——, ——, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991). As such, it is for the court, not the jury, to decide. Thus, if there is not a material issue of fact regarding what happened, the court makes the qualified immunity decision. This could occur at a summary judgment motion, *Elliott v. Thomas,* 937 F.2d 338, 345 (7th Cir.1991), or at a motion for a directed verdict. *Krause v. Bennett,* 887 F.2d 362, 368 (2d Cir.1989). If the court decides the defendant has qualified immunity, the defendant prevails on the § 1983 action. If the court decides in favor of the plaintiff, the question of whether a constitutional violation occurred would still be decided by the jury. We recognize, howev-

---

**3.** Idaho Rule of Civil Procedure 9(b) requires that "all averments of ... violations of civil or constitutional rights shall be stated with particularity."

er, that there will be cases where the trial court will find that there are material issues of fact in dispute and that such precludes the court from ruling on the qualified immunity question (e.g., cases where clearly settled constitutional rights were violated if the plaintiff's testimony is believed but were not if the defendant's testimony is believed). The appellate courts are divided on how to deal with that situation. The Seventh Circuit Court of Appeals holds that the trial court still makes the determination of qualified immunity. *Simkunas v. Tardi*, 930 F.2d 1287, 1291 (7th Cir.1991); *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir.1988). Other courts have submitted the qualified immunity issue to the jury with special interrogatories which instruct the jury how to resolve the immunity issue depending on what facts it finds. *Brandenburg v. Cureton*, 882 F.2d 211, 216 (6th Cir.1989). We adopt a third alternative, one used by the Second Circuit. The court should submit special interrogatories as to the factual dispute to the jury and then make its qualified immunity decision based upon the answers to the interrogatories.

> The better rule, we believe, is for the court to decide the issue of qualified immunity as a matter of law, preferably on a pretrial motion for summary judgment when possible, or on a motion for directed verdict. If there are unresolved factual issues which prevent an early disposition of the defense, the jury should decide these issues on special interrogatories. The ultimate legal issue whether, on the facts found, a reasonable [official] should have known he acted unlawfully is a question of law better left for the court to decide.

*Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir.1990); *see McIntosh v. Weinburger*, 810 F.2d 1411, 1431, n. 8 (8th Cir.1987). In our view, this rule best protects the respective duties of the court (to rule on matters of law) and the jury (to determine issues of

fact) and thus furthers our state constitutional mandate to hold the right to a jury trial "inviolate." Idaho Const. art. 1, § 7.

We note the rule we adopt today is consistent with our holding in *Idaho First Nat. Bank v. Bliss Valley Foods*, 121 Idaho 266, 274, 824 P.2d 841, 849 (1991), that, when matters within the court's equitable jurisdiction are being tried, the jury's findings of fact are advisory only and that the trial court is required to find "the facts specially and state separately its conclusions of law thereon." *Id.* (quoting I.R.C.P. 52(a)). A plaintiff who files a complaint for damages under 42 U.S.C. § 1983, unlike the plaintiff in the mortgage foreclosure action in *Bliss Valley*, is entitled to a jury trial because the cause is legal, not equitable, in nature. In cases sounding in law, the parties have the right to have the facts determined by a jury. Idaho Const. art. 1, § 7; *David Steed and Assocs. v. Young*, 115 Idaho 247, 250, 766 P.2d 717, 720 (1988). If Lubcke had asked for equitable relief instead of damages, a different result might be obtained.[4] However, she has asked only for damages; therefore, we need not reach the issue of whether the court or the jury determines the facts as to equitable causes of action under 42 U.S.C. 1983. At the same time, we limit our holding to cases where monetary relief is the only remedy sought.

Thus, in light of the above authority, we conclude that the district court erred in allowing the jury to decide the legal component of the qualified immunity test. Fortunately, however, the district court wisely submitted special interrogatories to the jury. The answers to those special interrogatories show that the jury believed that Worrell fired Lubcke because of Lubcke's exercise of her First Amendment rights. Under *Harlow*, Worrell is entitled to qualified immunity only if she did not violate clearly established constitutional law. Thus, Worrell should be immune from suit

---

**4.** In federal court there is no Seventh Amendment right to a jury trial in equitable actions. *Ross v. Bernhard*, 396 U.S. 531, 533, 90 S.Ct. 733, 735, 24 L.Ed.2d 729 (1970). In cases where legal and equitable issues are joined, the legal claim is tried first by a jury, and the relevant

jury findings will bind the trial court in its decision on the equitable cause of action. *Beacon Theatres Inc. v. Westover*, 359 U.S. 500, 510–11, 79 S.Ct. 948, 957, 3 L.Ed.2d 988 (1959); *Dairy Queen Inc. v. Wood*, 369 U.S. 469, 473, 82 S.Ct. 894, 897, 8 L.Ed.2d 44 (1962).

if: a) it was not clearly established law in 1986 that a public employee may not be terminated for her exercise of her First Amendment rights, and b) it was not clearly established in 1986 that an employee with a property interest in her job could not be terminated without being informed of the true reasons for the termination and without being given an opportunity to address those charges.

The question of whether Worrell is entitled to qualified immunity as to the procedural due process claim is easily resolved because it was clearly settled law as of 1985 that when public employees have a protected property interest in their employment, the due process clause requires that, prior to termination, the employees be given: a) oral or written notice of the reason(s) for the termination, b) an explanation of the employer's evidence, and c) an opportunity to present their side of the story. *Cleveland Board of Educ. v. Loudermill*, 470 U.S. at 542, 105 S.Ct. at 1493. In light of the jury's finding that Lubcke was never told the true reason for her termination, we hold that Worrell violated clearly settled law and is not entitled to qualified immunity as to the procedural due process claim.

The question of whether Worrell is entitled to qualified immunity as to the First Amendment issue, is not as easily resolved. We do note that it is clearly settled law that government officials cannot terminate public employees for exercising their First Amendment rights to speak on a matter of public concern except in limited circumstances. *Pickering v. Board of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). However, whether this case falls within one of the exceptions to that rule requires the balancing of several factors which the district court is in a better position to do than is this Court.

In *Pickering*, a high school teacher was dismissed after a local paper published his letter criticizing the school board's budgetary policies. The Court found that the letter discussed a legitimate topic of public interest and therefore was entitled to First Amendment protection. Nevertheless, the Supreme Court also held that the teacher's interest in freely expressing his views on matters of public concern must be balanced against the employer's interest in effective and efficient public service. 391 U.S. at 568, 88 S.Ct. at 1734. Specifically the Court noted that dismissal for the exercise of First Amendment rights might be permissible in cases where the need for confidentiality is great or in cases where the relationship between the "superior and subordinate is of such a personal and intimate nature that certain forms of public criticism would seriously undermine the effectiveness of the working relationship between them." 391 U.S. at 570, n 3, 88 S.Ct. at 1735, n 3.

The *Pickering* case set forth four factors to consider when determining whether a termination because of an employee's speech has violated the First Amendment: a) the effect of the plaintiff's conduct on the discipline and harmony among co-workers, b) the need for confidentiality, c) whether the conduct impeded the employee in competently performing her daily duties, and d) the need to encourage a close and personal relationship involving loyalty and confidence between the employee and her superiors. *Clark v. Holmes*, 474 F.2d 928, 931 (7th Cir.1972), *cert. denied*, 411 U.S. 972, 93 S.Ct. 2148, 36 L.Ed.2d 695 (1973); *Connor v. Reinhard*, 847 F.2d 384, 393 (7th Cir.1988).

In 1983, the Supreme Court refined the *Pickering* analysis in *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). In *Connick*, the Supreme Court explained that a court must first determine whether the speech involves a matter of public concern. If the speech involves a matter of public concern, the court must then engage in the *Pickering* balancing test. The Supreme Court noted that "[t]he inquiry into the protective status of speech is one of law, not fact." 461 U.S. at 148, n 7, 103 S.Ct. at 1690, n 7.

As a matter of law, the trial court need not submit the question to the jury. However, the determination of this question of law turns on the court's evaluation of evi-

dence presented regarding the *Pickering* factors. The district court had the opportunity to hear and evaluate the evidence presented while this Court has only the cold record before it. Therefore, we deem it prudent to remand to the district court the determination of Worrell's entitlement to qualified immunity as to the First Amendment issue. If the court determines that Lubcke's speech was protected speech under the *Connick–Pickering* criteria, it should hold that Worrell is not entitled to qualified immunity because she violated clearly settled law in terminating Lubcke for exercising her First Amendment rights. In such event, the jury verdict against Worrell will stand. If the court determines that Lubcke's speech was not protected speech, the court should vacate the judgment against Worrell as to the First Amendment claim.

As we have already determined that Worrell is not entitled to qualified immunity on the procedural due process issue, the district court need not address that issue on remand.

### 11. The court did not err in admitting Exhibit 12 into evidence.

■ Plaintiff's Exhibit 12 is a letter to the Regional Inspector General of the Department of Housing and Urban Development wherein Worrell and Hudgins, the authors, list four allegations of improper conduct against Lubcke and recommend that a full-scale investigation of Lubcke be initiated by HUD. HUD took no action as a result of this letter. The defendants-appellants contend that exhibit 12 was improperly admitted as to the breach of contract claim because it was not relevant, having been written after Lubcke was terminated. The Housing Authority argues that because of the timing and because it was not shown to have been issued under color of state law or as a result of an official policy or custom it was also not relevant to the § 1983 action against it. Worrell individually contends that the exhibit was irrelevant for the above reasons and because she was protected by absolute immunity against any claim arising from

the exhibit. *See Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (administrative officials who are performing prosecutorial and judicial functions in initiating and moving forward with administrative proceedings enjoy absolute immunity from suits relating to those functions).

As Lubcke points out, the flaw in the Worrell's immunity argument is that Lubcke's causes of action do not arise from the communications in Exhibit 12. Lubcke did not claim the writing of the letter, itself, was a violation of a constitutional right. Thus, the decision to admit the exhibit did not affect Worrell's immunity because the jury had no opportunity to award damages for the writing of the letter itself. Further, the district court informed the jury that Worrell was "absolutely privileged to report information regarding the plaintiff to the Inspector General [of HUD]," Court's Instruction 2B, R. 235, in order to prevent any unfair prejudice to Worrell. *See Werth v. Tromberg*, 90 Idaho 204, 409 P.2d 421 (1965) (limiting instruction regarding admitted exhibit eliminated prejudice to party).

■ Idaho Rule of Evidence 402 provides that "all relevant evidence is admissible ... Evidence which is not relevant is not admissible." The question of relevancy is not a discretionary matter as there is no issue of credibility or finding of fact for the trial court to resolve prior to deciding to admit or reject the evidence. Accordingly, this Court will review the trial court's relevancy decisions under the *de novo* standard of review. After considering the arguments of the parties, we conclude that the district court did not abuse its discretion in holding (or concluding) that the exhibit was relevant to Lubcke's claims. The Worrell–Hudgins letter, in the words of the district court, is "frankly, so malicious that it undermines the defendant's arguments that the termination decision represented a rational response to a recalcitrant employee." Accordingly, it tends to support Lubcke's theory that she was terminated in retaliation for her First Amendment activities; the letter also lends support to Lubcke's

claim that the Housing Authority was engaged in a smear campaign against her as a cover-up for its improper action. Conversely, it tends to undermine the reasons advanced by the Housing Authority purporting to justify the termination.

## B. WE REMAND FOR FURTHER FINDINGS REGARDING THE MOTION FOR A NEW TRIAL AS TO DAMAGES OR A REMITTITUR.

■ Rule 59(a)(5) of the Idaho Code of Civil Procedure allows the district court to grant a new trial "to all or any of the parties and on all or part of the issues in an action for ... [e]xcessive damages or inadequate damages, appearing to have been given under the influence of passion or prejudice."

In drafting this opinion, readily came to mind the last opinion which the late Chief Justice Allan G. Shepard wrote before his death on May 17, 1989, i.e., the concurring and dissenting opinion filed in *Sanchez v. Galey*, 115 Idaho 1064, 1081, 772 P.2d 702, 719 (1989). Justice Shepard's opinion, as were all of his opinions, was well-written and soundly based on the appeal records. It is set out in full and attached hereto as Appendix A. In the *Sanchez II* opinion, this Court purported to identify the standard for district courts to follow when faced with a motion under I.R.C.P. 59(a)(5):

> If, technically, the verdict is supported by substantial, competent evidence and it still finds the verdict excessive, then it must rule whether in its opinion the jury appears to have acted under the influence of passion or prejudice. In ascertaining whether the jury appears to have so acted, the judge looks to the disparity between the awards and to whether such disparity 'shocks the conscience.'

Quoting *Sanchez v. Galey*, 112 Idaho 609, 615, 733 P.2d 1234, 1240 (1987) (*Sanchez I*).

In *Sanchez I*, the Court set aside the district court's order granting remittitur or new trial because we could not "ascertain whether the trial court was either shocked by the jury's award, or whether it found that award unconscionable.... The trial

court made no finding that the amount of the jury verdict 'appeared to have been given under the influence of passion or prejudice.'" *Sanchez I*, 112 Idaho at 616, 733 P.2d at 1241.

In *Sanchez II*, after the remand, "the trial court found that the amount of the verdict did not shock him, but that he did find it unconscionable. The trial court also found that the amount of the verdict indicated that the jury was acting under the influence of passion or prejudice." *Sanchez II*, 115 Idaho at 1070, 772 P.2d at 708. As a result, this Court refused to "tinker with the exercise of the trial court's discretion" and affirmed the order requiring a remittitur or new trial. *Sanchez II*, 115 Idaho at 1070, 772 P.2d at 708.

Here in Lubcke's case, the district court's April 11, 1990, decision and order on the post-trial motions recognized, in respect to a remittitur, that "[i]f the trial judge determines that there is such great disparity between his or her own assessment of the damages that it can only be explained by passion or prejudice then a new trial will be granted...." After going through the evidence and applicable law, the district court ruled:

> The damages awarded for the violation of civil rights appear reasonable in light of the somewhat unquantifiable nature of mental or emotional distress. The plaintiff's evidence supports a verdict of $57,703 for breach of contract which is exactly what the jury awarded. The damages ... do not appear to have been given under the influence of passion or prejudice.

The district court did properly identify the language of I.R.C.P. 59(a)(5) ("given under the influence of passion or prejudice"). However, the above-quoted conclusion does not reflect that the trial court performed the required analysis. "[T]he trial court's ruling does not disclose the weighing of evidence, the determination of what amount the trial court would have awarded [respondent], and the comparison of this amount with the jury's award." *Stewart v. Rice*, 120 Idaho 504, 509, 817

P.2d 170, 175 (1991). Therefore, we remand to the district court to undertake this analysis as to the breach of contract and first amendment claims. As noted above, we have vacated the damage award on the procedural due process claim and remanded for a new trial on that issue.

Because of that resolution of this issue, we need not address the question of whether the damages were excessive as claimed by the appellants.

## C. LUBCKE IS THE PREVAILING PARTY ON APPEAL FOR PURPOSES OF § 1988 ATTORNEY FEES.

 Lubcke has requested that she be awarded attorney fees pursuant to 42 U.S.C. § 1988. That statute permits a court, in its discretion, to award attorney fees to a prevailing party both at trial and on appeal. *Hutto v. Finney*, 437 U.S. 678, 694, 98 S.Ct. 2565, 2567, 57 L.Ed.2d 522 (1978). In order to be a prevailing party, "a civil rights plaintiff must obtain at least some relief on the merits of his claim." *Farrar v. Hobby*, —— U.S. ——, ——, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992). However, being the prevailing party only establishes eligibility to receive an award of attorney fees. The amount of fees awarded is determined by considering the extent of the plaintiff's success. *Hensley v. Eckerhart*, 461 U.S. 424, 440, 103 S.Ct. 1933, 1943, 76 L.Ed.2d 40 (1983). In an extreme example of this principle, the Supreme Court held that "[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief ... the only reasonable fee is usually no fee at all." *Farrar*, —— U.S. at ——, 113 S.Ct. at 575.

 We hold that Lubcke is the prevailing party on appeal because: a) she preserved her judgment of liability on the procedural due process issue as to both Worrell and the Authority, and b) she preserved her judgment of liability on the First Amendment claim at least as to the Housing Authority. Presently, however, because we have remanded some remaining issues for further proceedings in the district court, we also leave it to the district court to determine the proper award of attorney fees. I.A.R. 41(d).

### Conclusion

The decision of the district court is affirmed in part and reversed in part. The cause is remanded for further proceedings in conformity herewith. We also hold that Lubcke is entitled to attorney fees on appeal but leave to the district court's determination the amount thereof. Costs to Lubcke.

McDEVITT, C.J., and JOHNSON and TROUT, JJ., concur.

BAKES, Justice (Retired) concurring in part and dissenting in part.

While I concur with the remand of this case to the trial court, I disagree with the majority's conclusion that "there was direct and circumstantial evidence which showed that both Hudgins and Worrell were aware of Lubcke's First Amendment activities." *Ante* at 462, 860 P.2d at 665.

To establish a prima facie case that the respondent was wrongfully discharged because she exercised her First Amendment rights, she must show that her conduct in exercising her First Amendment rights was known to the defendants, and that it was a "substantial" or "motivating" factor in appellant's decision to fire her. *Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The only evidence of an exercise of First Amendment rights was Lubcke's letter to the editor of *The Idaho Statesman*, and a meeting which Lubcke had with the mayor and the county commissioners regarding tenant complaints. However, as appellants vehemently argued, both in their brief and at oral argument, the record contains absolutely *no* evidence that either Worrell or the Board of Directors of the Housing Authority were ever aware of these actions. At the time that Lubcke wrote to *The Idaho Statesman*, and met with the mayor and county commissioners, the defendant Worrell was not even employed by the

Housing Authority—she was working in California.

The evidence cited by the majority to support Lubcke's claim are Exhibits 2Q and 2P, which were Worrell's notes of interviews with Lubcke. The majority states that in these exhibits "Worrell wrote that Lubcke told her that a co-worker was trying to discredit Lubcke because of 'the Owen Krahn hassle.'" Worrell wrote in Exhibit 2Q, dated September 18, 1986, that Lubcke feared Worrell disliked her "due to the 'Owen Krahn' situation." While those exhibits indicate that Lubcke told Worrell about the "Owen Krahn hassle" or the "Owen Krahn situation," and that Worrell knew about a problem between Krahn and Lubcke, those exhibits are totally devoid of any statement by Lubcke, or any reference to knowledge on the part of Worrell or the Board about any letter to the editor of *The Idaho Statesman*, or any meeting with the mayor and county commissioners. All the record establishes is that there was a dispute between Lubcke and Owen Krahn, Lubcke's superior, and that Lubcke said something to Worrell about it. However, Lubcke's "hassle" with Owen Krahn is not the basis for Lubcke's First Amendment claim, nor could it be. Her First Amendment claim has to be based upon the fact that Worrell and the Board knew about her letter to *The Idaho Statesman*, and her meetings with the mayor and the governor, and that that letter and those meetings were "substantial" or "motivating" factors in the Board's decision to fire her. Lubcke's telling Worrell that she had a "hassle with Owen Krahn" or that there was an "Owen Krahn situation," is not evidence that Worrell had any knowledge of Lubcke's writing to the editor or meeting with the mayor or the county commissioners.

The only other evidence cited by the Court of a First Amendment violation is the statement that "Krahn did hire Worrell."[5] To affirm a jury finding that Lubcke was fired for exercising her First Amendment rights merely because Krahn hired Worrell, or that Worrell worked closely with Hudgins on matters relating to Lubcke's termination, is to permit a jury to engage in pure speculation. There is no evidence in this record that either Worrell or the Board knew about the exercise by Lubcke of her First Amendment rights.

Furthermore, Lubcke had to introduce evidence that her exercising her First Amendment rights was a "substantial" or "motivating" factor in appellants' decision to fire her. Again, the record contains no evidence that appellants fired respondent for violation of several HUD violations. The respondent has completely failed to show any knowledge or causation between the exercise of her rights and her subsequent termination. Accordingly, I would vote to reverse the trial court's failure to grant a directed verdict or judgment notwithstanding the verdict on the first amendment claim.

Since Lubcke's First Amendment claim is without merit, it necessarily follows that the majority's conclusion that Lubcke met her burden of proving that appellants breached her contract of employment by terminating her without good cause, is also erroneous. The majority upholds the trial court's conclusion that because respondent's discharge was due to her exercise of First Amendment rights, the appellants breached the employment contract. However, there is no evidence in the record that her termination was due to her exercise of

---

5. The Court's full statement reads:

Moreover, there was circumstantial evidence which showed that Hudgins and Worrell knew about Lubcke's First Amendment activities. Owen Krahn, the fired executive director, was aware of Lubcke's statements. Further, Krahn threatened to fire Lubcke if Lubcke failed to support him. Although Krahn did not terminate Lubcke before his own termination, Krahn did hire Worrell. After Krahn was terminated and Worrell was made executive director, Krahn met with Hudgins and accused Lubcke of misconduct. There was also evidence that Hudgins and Worrell worked closely together on matters relating to Lubcke's termination, including the drafting of the two dismissal letters as well as the letter to HUD. The jury could have deduced from this evidence that Krahn wanted Lubcke fired because of her criticism of his administration and then enlisted Hudgins and Worrell into that plan.

her First Amendment rights. Accordingly, there is no basis for sustaining the jury's finding of a breach of the employment contract because of an alleged First Amendment violation.

## APPENDIX A.

SHEPARD, Chief Justice, concurring and dissenting.

I concur in that portion of what is evidently a plurality opinion which affirms the action of the trial court, giving plaintiff-appellant Sanchez the option of accepting a reduction in the jury verdict, or in the alternative granting a new trial.

As to that portion of the opinion which awards 'post-judgment interest,' I dissent.

The genesis of this prolonged litigation was the accident suffered by plaintiff-appellant Sanchez in November 1982. Action was initiated by Sanchez, resulting in a jury verdict upon which judgment was entered in October 1984 in the amount of 1.35 million dollars. By order dated January 25, 1985, defendant's motion for a new trial was granted 'unless a remittitur was accepted,' reducing the verdict and the judgment entered thereon to the sum of $950,000.00. As is correctly set forth in the opinion of Bistline, J. quoting the trial court's ruling, '[t]he order dated February 25, 1985 ... which granted a new trial unless a remittitur was accepted, effectively vacated the judgment and amended judgment previously entered on the jury's verdict.'

Plaintiff-appellant Sanchez then initiated an interlocutory appeal, asserting error in the trial court's action in vacating the jury verdict, and in the alternative ordering a reduction or the granting of a new trial. It has not been until today's opinion that either the parties or the trial judge have known the outcome of that original interlocutory appeal. It should be noted, as correctly pointed out in the opinion of Bistline, J., that at a later time the defendant Galey joined as a cross-appellant, asserting error at trial. However, in the opinion of this Court of October 1986, the actions of the trial court were affirmed as they related to the cross-appeal of Galey.

With all due respect, it is my view that from that point forward the cause entered a Lewis Carroll type of world. Nothing is as it appears to be, and sense becomes nonsense. The majority appears to uphold the order of the trial court reducing the jury verdict to $950,-000.00, or the trial court will order a new trial. More than four years have passed since the entry of that trial court order. There is still no indication in the record before us whether or not plaintiff will accept that remittitur, or whether a new trial will be granted. While the record does not so indicate, the question raised is, of course, academic. As a result of what I perceive to be the intransigence of this Court, 'post judgment' interest has now been decreed by this Court which will, within a few dollars, restore to plaintiff Sanchez not only the original jury award of 1.35 million dollars, but add another $200,000.00.

Thus, as best I perceive the result mandated by the opinion of this Court, the non-existent 'judgment' of the district court awarding $900,000.00 to the plaintiff is affirmed, together with interest in the amount of approximately $620,-000.00. (*See* 1981 Idaho Sess.Laws ch. 157; 1987 Idaho Sess.Laws ch. 278.) Upon remand I will await the actions of the parties and the court with more than the usual curiosity.

Will plaintiff withdraw its motion for a new trial? Will defendant now move for a new trial? Will the trial court, on its own motion, grant a new trial? What are the time strictures on any such actions? I suggest that the opinion of this Court has placed itself, the trial court, and the parties in an imbroglio from which none can be extricated.

*Sanchez v. Galey*, 115 Idaho 1064, 1081–82, 772 P.2d 702, 719–20 (1989).